THE STATE ex inf. FREDERICK E. MUELLER, Prosecuting Attorney, v. WILLIAM FRY, LOUIS BEHLE and F. C. BANGERT, Appellants.

Division One, October 4, 1923.

1. **CONSTITUTIONAL LAW**: Local Law: School Districts: Act of 1913. The Act of 1913, Laws 1913, page 713, now appearing as Section 11192 of Revised Statutes 1919, and providing that "in any county in this State containing seventy-five thousand population and adjoining a city having over five hundred thousand inhabitants, whenever territory is annexed to an incorporated town or city for school purposes, the adult taxpayers residing outside of

the corporate limits of the town or city and in the school district thereof" may form a separate school district, infallibly pointed out St. Louis County and certain school districts there·n as the sole subject of the legislation, as fully and unerringly as it would have done had it mentioned St. Louis County as the only county to which it could apply, and was a local law and void; and a school district organized in pursuance thereof, being unauthorized by any other statute, can have no legal existence.

2. ———: ———: School Districts: General Law Applicable: Exception: Necessity. The Constitution declares that where a general law can be made applicable no local or special law shall be enacted, and makes the question a judicial one; and while a law applicable to certain school districts only may be general, to make it general there must be some substantial distinguishing peculiarity which gives rise to the necessity for a separate classification; but where a city school district embraces both city and ·rural territory, the fact that the voting population of the city exceeds that of the rural territory and controls the election of directors and votes an indebtedness for purposes not desired by or against the interests of the rural population, is not a sufficient distinction or necessity for the enactment of a law, applicable to one county only, authorizing the taxpayers in said rural territory to segregate it from the city district and organize it into a separate district, for like differences of desires and interests may exist in city districts in other counties.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney*, Judge.

AFFIRMED.

*Jos. C. McAtee* for appellants.

(1) The Act of 1913, Laws 1913, p. 715, Secs. 11192 to 11196, R. S. 1919, is not in its terms local or special. State ex rel. v. Marion County, 128 Mo. 427; State ex rel. v. Roach, 258 Mo. 557. (2) Classification according to population has been repeatedly held to be sufficient to remove an act, otherwise special, into the category of general laws. State ex rel. v. Wurdeman, 254 Mo. 576; State ex rel. v. Southern, 265 Mo. 283; State ex inf. v. Miller, 100 Mo. 447. (3) The word or term "when-

ever'' as used in the act in question, is as prospective in operation as the words or term ''hereafter.'' The word or term ''whenever'' is an adverb of time rather than of place, and its indication is future rather than present. Kenebec P. R. Co. v. Ry. Co., 59 Me. 61. The word means ''at whatever time'' and does not apply only to cities, which were, at its approval, indebted in the sum men-tioned. Ex parte Wells, 21 Fla. 301. (4) The act may be valid when, owing to the circumstances and exigencies of the particular case, a general law cannot be made applicable. Henderson v. Koenig, 168 Mo. 376; State ex inf. v. Southern, 265 Mo. 287; State ex rel. v. Taylor, 224 Mo. 417.

*Julius R. Nolte* for respondent.

(1) The Act of 1913 is unconstitutional and void because it is applicable, if at all, to only one county in the State, to-wit, St. Louis County, and then applicable solely at the time of its approval. State ex rel. Harris v. Herrman, 75 Mo. 352; State ex rel. v. County Court, 89 Mo. 237; State ex rel. v. Turner, 210 Mo. 83; State ex inf. v. Southern, 265 Mo. 288; Bridges v. Mining Co., 252 Mo. 53. (2) The act aforesaid is unconstitutional because it makes no provision from the ascertainment of the population of the counties or cities, that come, if at all, under its provisions, and St. Louis County is the only county that adjoins a city, and it will require future legislation to have another county join a city. State v. Logan, 268 Mo. 169, 175; State ex rel. Taggart v. Perkins, 223 S. W. 406. (3) The statutes in and prior to 1913 and to the present time have contained general provisions for organization over the State of city and town school districts and for annexation thereto for school purposes of territory outside of such city or town, with the consent of the voters of the city or town district and of the district constituting or containing the territory to be added, declared in a prescribed manner. R. S. 1919, secs. 11236-37, 11252-54. (4) The

statutes at the same time have contained general pro-
visions for the disorganization of any such city or town
district by a two-thirds vote of the resident voters and
taxpayers of such district. R. S. 1919, sec. 11242; State
ex rel. Bach v. Fry, 186 Mo. 198; State ex inf. v. Sweaney,
270 Mo. 685. (5) There is no law for dividing a city
or town district into two districts. The law demands
that the city or town district must be disorganized upon
certain proceedings only when authorized by a two-thirds
vote of the resident voters and that after such disor-
ganization the territory may be organized into a common
school district (Sec. 11242) and this might in turn be,
divided into two districts. State ex inf. v. Sweaney, 270
Mo. 685. (6) There is no legal way for a part of said
school district of the city of Ferguson to organize into a
separate school district until said Ferguson City Dis-
trict has been legally disorganized. R. S. 1919, sec.
11242; State ex inf. v. Sweaney, 270 Mo. 692; State ex
rel. Muns v. Hackman, 283 Mo. 477. (7) The Act of
1913, in the locality where it is intended to apply, would
authorize an entirely different procedure for disorgani-
zation of a city or town district from that prescribed for
other counties of the State, and grant radically different
rights as to such disorganization to the taxpayers and
qualified voters residing outside the corporate limits of
the city or town and deprive the resident voters and
taxpayers within the corporate limits of any chance
whatever as to such disorganization. State ex rel. Har-
ris v. Herrman, 75 Mo. 353. (8) The act aforesaid is
unconstitutional and void because it undertakes to limit
its application to any county in this State containing
seventy-five thousand population and adjoining a city
having over five hundred thousand inhabitants whenever
territory is annexed to an incorporated city or town for
school purposes, at the time of taking effect of said act;
it applies, if at all, to counties that met its provisions when
enacted and no other county or counties can by natural
growth or development come under its provisions. State

ex rel. v. Turner, 210 Mo. 83; Murname v. St. Louis, 123 Mo. 494; State ex rel. v. Williams, 232 Mo. 73; State ex inf. v. Southern, 265 Mo. 289; Dunne v. K. C. Cable Ry. Co., 131 Mo. 5; Forgave v. Buchanan Co., 282 Mo. 608; State ex rel. Taggart v. Perkins, 223 S. W. 406. (9) There is no distinguishing peculiarity giving rise to a necessity for a law so radically different in a county containing seventy-five thousand population and adjoining a city having over five hundred thousand inhabitants from the law applicable to other counties. The same conditions in such a county exist in most of the counties of the State. If there is reason or necessity for such a statute it may be as readily provided by a general law for the whole State as by a law for the county of St. Louis alone. "Where a general law can be made applicable no local or special law shall be enacted." State ex rel. v. Miller, 100 Mo. 448; Murname v. St. Louis, 123 Mo. 491; Dunne v. Cable Ry. Co., 131 Mo. 5; State v. Anslinger, 171 Mo. 612; State ex rel. v. Perkins, 223 S. W. 406.

LINDSAY, C.—This proceeding originated in an information filed by Frederick E. Mueller as Prosecuting Attorney of St. Louis County against William Fry and two others, as defendants, who are the appellants here. The information charged that the three defendants since the 11th day of June, 1921, "pretended to have been elected to" and "have unlawfully claimed, usurped, used, held and exercised the offices of school directors of, in and for" Chambers School District in St. Louis County, a "pretended" school district, having no legal existence. A writ of *quo warranto* issued, and defendants made return thereto. The defendants set forth in their return and answer certain proceedings, had upon notice, by adult taxpayers of the City of Ferguson School District, residing outside of the city of Ferguson, whereby a school district called Chambers School District, was alleged to have been organized of territory outside of said city limits, but of territory theretofore forming a part of

300 Mo.—35

said city of Ferguson School District; and it was alleged that following and pursuant to said organization the defendants were elected as directors and qualified as such.

The defendants denied the allegation that there was no legally incorporated school district in St. Louis County known as Chambers School District, and denied that they had unlawfully held and exercised the office of school directors thereof. They also alleged that the territory in Chambers School District, formerly part of the Ferguson School District, constituted 57 per cent of the taxable wealth of the Ferguson School District; that the population of Ferguson consisted mainly of persons working and having business in the city of St. Louis, and outnumbered the population of the Chambers School District in the ratio of three to one, and always elected the board of directors, and fixed tax rates so excessive as to be in a measure confiscatory of the property in Chambers School District, which is exclusively a farming district. They alleged that the people of Ferguson had passed a bond issue, which had been set aside and restrained, but were threatening again to pass such bond issue of $75,000, for the construction of a gymnasium which would be of no benefit to the residents of Chambers School District.

The informant filed a demurrer to the return and answer of defendants, set forth in his demurrer the various special grounds upon which it is claimed that the return was insufficient. The demurrer is not based upon the ground of lack of formal compliance by defendants with the requirements of the statute under which defendants and others proceeded in undertaking to organize Chambers School District but is directed against the validity of the statute itself. The court sustained the demurrer, and entered judgment ousting defendants.

It stands conceded that there was no way by which the Chambers School District could be organized in the

manner adopted, into a separate district, out of the territory forming part of Ferguson School District under the general laws applicable to school districts, but that it could be done in that manner, if at all, only by virtue of the Act approved March 25, 1913, Laws 1913, page 715, now appearing as Sections 11192, 11193, 11194, 11195, 11196, Revised Statutes 1919. The act is said to be violative of paragraphs 2, 14, 15, 19, and 32 of Section 53, Article IV, of the Constitution, in that it is a local or special law, (2) regulating the affairs of school districts, (14) changing the lines of school districts, (15) creating offices and prescribing the powers and duties of officers in school districts, and (19) regulating the management of public schools, in each and all of which particulars a general law could have been made applicable as required by paragraph 32 of said Section 53.

The enabling provision of the act (Sec. 11192, R. S. 1919) is as follows:

"In any county in this State containing seventy-five thousand population and adjoining a city having over five hundred thousand inhabitants, whenever territory is annexed to an incorporated town or city for school purposes, the adult taxpayers residing outside of the corporate limits of the town or city and in the school district thereof may, after giving thirty days' notice," hold the meeting, and take the action for the formation of a new district set forth in defendant's return.

It is thus apparent that this statute can apply only in a county which has seventy-five thousand population and which also *adjoins* a city having over five hundred thousand inhabitants. The defendants urge that the act "is not in its terms local and special," and therefore should be sustained, and cite in that behalf State ex rel. v. Marion County, 128 Mo. 427, and State ex rel. v. Roach, 258 Mo. 541, 557, 558. But this court in those cases was far from holding that the mere use of certain general terms or the statement of a classification, general only in its outward seeming, determines whether a law is

general or local.  The contention here is that in the Act of 1913 the classification is according to population. Following that it is urged that classification according to population has been repeatedly held to be sufficient to remove an act, otherwise special, into the category of general laws.  This is true.  It was so held in State ex rel. v. Miller, 100 Mo. 439, a case cited and much relied upon by defendants.

In that case the act under review while at the time it could be applicable only to the city of St. Louis, because that city was then the only one in the State having a population of over three hundred thousand, was so drawn as clearly to leave its provisions open to any other city thereafter attaining a population of over three hundred thousand.  But the law involved in the case at bar is not so open to let in other counties than St. Louis County.

Defendants cite also State ex rel. v. Wurdeman, 254 Mo. 561, and State ex inf. v. Southern, 265 Mo. 275.

In the Wurdeman Case there was under consideration indirectly the Act of 1913, Laws 1913, page 199, under which there was created an excise commission for St. Louis County.  Said act applied to "all counties in this State which now have, or may hereafter have, a population of seventy-five thousand inhabitants or more and which now, or may hereafter, adjoin a city having a population of five hundred thousand inhabitants or more."  The validity of this statute was assailed, but a majority of the judges were of the opinion that its validity was only collaterally involved in the *habeas corpus* proceeding there under consideration, and refused to concur in so much of the opinion as held the statute to be valid.

In the Southern Case there were under consideration two provisos, each having to do with the office of County Highway Engineer, and each standing in part upon a basis of classification according to population. The first proviso considered, applied to "all counties in the State which contain or which may hereafter contain

more than fifty thousand inhabitants, and whose taxable wealth exceeds or may hereafter exceed the sum of forty-five million dollars, or which adjoin or *contain* therein, a city of more than 100,000 inhabitants by the last decennial census.'' This proviso was sustained as not being local only in its application. Its application was not restricted to a county adjoining a city having certain population, but applied also to any such county then or thereafter *containing* a city of the required population. The statute involved in the case at bar can only apply to St. Louis County, as the only county in the State which adjoins the city of St. Louis. The county does not contain the city.

The other proviso under consideration in the Southern Case was held to be invalid as a local law manifestly applicable only to Jackson County. That proviso undertook to apply ''in all counties in this State which contain or may hereafter contain two hundred thousand and less than four hundred thousand inhabitants, and which county or counties *contain* one hundred and fifty miles or more of macadamized roads, outside of municipal corporations, and which county or counties *pay* to the county surveyor a salary of three thousand dollars or more annually.'' The language of that proviso concerning the mileage of macadamized roads, and concerning the amount of salary paid to the County Surveyor, was held to refer to a condition existing at the time of the passage of the act, and as having reference solely to Jackson County. The classification as to population was held not to be based upon any natural division of counties, but was a further indication that Jackson County alone was the subject of the legislation, it alone having reached the stage of population intermediate between the minimum and maximum limits. These various specifications it was held pointed out Jackson County as infallibly as if the proviso had mentioned that county by name. The statute in issue here as infallibly points out St. Louis County, and certain school districts in that

county, as the sole subject of the legislation. An increase of population in Kansas City to five hundred thousand would not bring Jackson County within the terms of this act, because Jackson County does not adjoin Kansas City, but contains the city. Other legislation would be required before the county could adjoin the city. [State v. Logan, 268 Mo. 169.]

The act therefore after the qualification, or classification by population, fixes another single, existing and arbitrary standard not applicable to any other county, through increase of population. In its terms, designating the county to which the act applies it uses words of present import, since it is a question not solely of the population of a county and of a city, but the county must adjoin the city. It does not use the words now or hereafter in that connection. It only provides that "whenever territory is annexed to an incorporated town or city for school purposes" in the county thus designated, the contemplated action may be taken by certain adult taxpayers of the school district. The act clearly appears to be local in character, and special in its application to a class within the designated territory.

Section 53 of Article IV of the Constitution after enumerating in 31 paragraphs certain subjects upon which no local or special law shall be enacted, contains the further provision in paragraph 32:

"In all other cases where a general law can be made applicable, no local or special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined, without regard to any legislative assertion on that subject."

Long prior to 1913, and since, statutes of a general nature (Secs. 10880-82, R. S. 1909; Secs. 11252-54, R. S. 1919) have been in force providing for the organization of city and town school districts, and the annexation of territory thereto for 'school purposes, outside of the city or town. In like manner there has been in force a

general law (Sec. 10870, R. S. 1909; Sec. 11242, R. S. 1919) providing for the disorganization of .any city or town school district by a two-thirds vote of the resident voters and tax-payers of the district. There has been no provision for dividing a city or town district into two districts, as might be done with a common school district. It was so held in State ex inf. v. Sweaney, 270 Mo. 685. But it was pointed out in that case that if a city or town school district should disorganize by a two-thirds vote it could organize as a common school district (Sec. 11242, R. S. 1919), and in turn be. divided into two districts (Sec. 11201). In the act before us a majority only of the qualified voters residing outside of the city may organize the new district.

The act grants rights to a class of persons in a single county radically different from those possessed by .others in other city and town school districts in the State. In State ex rel. v. Miller, 100 Mo. l.·c. 448, it was said: "A law which applies to certain school corporations only may be general, or it may be special. Much depends upon the particular matter of which the Legislature is treating. To make such a law general there must be some distinguishing peculiarity which gives rise to a *necessity* for the law as to the designated class. A mere classification for the purpose of legislation without regard to such *necessity* is simply special legislation of the most pernicious character and is condemned by the Constitution." And further: "There must be a substantial distinction, having reference to· the subject-matter of the proposed legislation, between the objects or places embraced in such legislation and the objects or places excluded."

The salient features pointed out by the defendants are: that the voting population of the district living within the city limits exceeds that of the· territory outside of the city, and controls the election of directors, and takes measures for incurring an indebtedness or expenditures for purposes not desired by or against the in-

terest of those residing outside of the city. But, like differences of opinion and of interest may as well exist in city and town school districts in other counties of the State. It cannot be assumed that the conditions in the city and town school districts in this county of seventy-five thousand inhabitants and adjoining a city of over three hundred thousand inhabitants are so unlike those in all other counties, as to demand a law radically different from the general law by which the others must be governed.

The Constitution makes the issue here involved a judicial question, and as such it must be judicially determined. It was the judgment of the circuit court that the Act in question was passed in contravention of the constitutional provisions that have been considered, and was invalid for that reason. The judgment is affirmed. *Small, C.,* concurs.

PER CURIAM:—The foregoing opinion of LIND-SAY, C., is hereby adopted as the opinion of the court. All of the judges concur.