THE STATE EX INF. NORTH TODD GENTRY, ATTORNEY-GENERAL, v. FRED L. ARMSTRONG ET AL., SUPERVISORS OF NORTHWEST MAPLEWOOD SEWER DISTRICT OF ST. LOUIS COUNTY.

Court en Banc, August 6, 1926.

1. **COUNTY: St. Louis.** By constitutional provision the city of St. Louis is a constitutional city, not embraced within the confines of a county, but having the most of the powers and duties of a county. The remainder of the territory formerly embraced in St. Louis County by the same constitutional provision became automatically the County of St. Louis, and is distinct from the city. And of this status, having been established under said constitutional provision, the courts take judicial notice in considering the validity of a law pertaining to the county.

2. **CONSTITUTIONAL LAW: Special: General Terms: County Adjoining City.** The simple use of general terms in a law will not suffice to make of a local and special law a general law, when the facts detailed in it and facts judicially known to the court show that it is not a general law. The Act of 1925, Laws 1925, page 343, providing for the incorporation and organization of sewer districts "in any county joining a city now or hereafter having a population of seven hundred thousand or more" applies only to the County of St. Louis, and can never apply to any other, and is a special and local law. It cannot apply to a county having within its boundaries a city of seven hundred thousand or more inhabitants, because such city would be a part of the county, and therefore the county could not adjoin a city; and there is no other county, except St. Louis County, to which the act could

ever apply without a constitutional amendment authorizing a separation of a city from the rest of the county in which it is situated.

3. ———: ———: **St Louis County: Classification: Drains and Sewers.** St. Louis County is one of the counties of the State, and stands upon the same plane as the other one hundred and thirteen counties. Conceding that sewer laws are closely akin to drainage laws, a drainage act applicable to St. Louis County alone would not be valid, but special and local.

4. ———: ———: ———: ———: **By Population: Sewer Act.** Population of counties may be made a basis of classification, provided the law covers an existing class, a part of which by natural growth may come within its terms after its enactment, and provided it expressly so provides by using the term "counties now having or hereafter having" the stated population But an act providing for the incorporation and organization of sewer districts "in any county joining a city now or hereafter having a population of seven hundred thousand or more" is not based upon a classification of counties by population; it does not use or suggest the population of counties as a basis of classification; it can apply only to the County of St. Louis, whereas a general law applicable to all counties having rural centers in need of sewer systems might have been enacted, and it therefore violates the constitutional provision inhibiting special and local laws.

5. ———: ———: ———: **Reasonable Classification.** To take an act out of the constitutional inhibition against local and special laws the classification must be based upon reasonable and impervious grounds. There are many congested rural centers adjacent to large cities as much in need of sewer systems as are the rural centers in St. Louis County, or any other city that might attain a population of seven hundred thousand, and there is no reasonable basis for an act which authorizes rural centers in St. Louis County alone to organize themselves into sewer districts. A general law applicable to all such congested centers•in all counties could be enacted, just as a drainage act applicable to all counties has been enacted.

6. ———: ———: **General Law Applicable.** Under Paragraph 32, Section 53, Article IV, Constitution of Missouri, which prohibits the enactment of a special law where a general law may be made applicable, all laws are special except (a) those which apply to a reasonable and natural class and (b) those that cover the State as a whole.

Corpus Juris-Cyc. References: **Evidence**, 23 C. J., Section 1867, p. 83, n. 88; Section 1868, p. 84, n. 5; p. 85, n. 22 New. **Statutes**, 36 Cyc., p. 985, n. 69; p. 988, n. 75; p. 991, n. 87; p. 1002, n. 28; p. 1009, n. 47.

*Quo Warranto.*

OUSTER AWARDED.

*North T. Gentry*, Attorney-General, and *Geo. W. Crowder*, Assistant Attorney-General, for relator.

(1)  The act violates Section 28, Article IV, Constitution of Missouri, in that it contains more than one subject, and in that the provisions of the act are not clearly expressed in the subject. State v. Rawlings, 232 Mo. 544; State v. Great Western Co., 171 Mo. 634; St. Louis v. Wortman, 213 Mo. 131; State v. Fulks, 207 Mo. 26.  (2) In any proceeding which has for its purpose the taking of the citizen's

property, or the taking of his property rights, whether in whole or in part, the property owner so affected is denied due process of law unless he is accorded the right, by adequate notice, to appear before some designated body or tribunal, and contest every essential step in such proceeding. Holden v. Hardy, 169 U. S. 366, 398; Citizens Saving & Loan Association v. Topeka, 20 Wall. (U. S.) 655, 670; Turner v. Wade, 254 U. S. 64; Norwood v. Baker, 172 U. S. 269; Embree v. Kansas City Road District, 240 U. S. 242; Jones v. Yore, 142 Mo. 38; Barber Asphalt Co. v. Ridge, 169 Mo. 376; St. Louis v. Railway, 211 S. W. 671. (3) The entire scheme of financing the improvements contemplated by the act challenged in this cause is based upon special taxation. While the form of the authority is for the levying of general taxes, the levies, in fact, constitute special taxation for public improvements, and the act can be upheld on no other theory. Laws 1925, p. 349, secs. 10, 11, 12. (a) The tax authorized to be levied for organization expenses is based on the square of lands within the district, the maximum rate being 20 cents for each 100 square feet of each tract or parcel of land, and no hearing is provided for to the property owner prior to the levy of this tax. Laws 1925, p. 347, sec. 7. (b) The tax defined by the act as "maintenance tax" which is authorized to be levied annually after the improvements are completed, "for the purpose of defraying the current expenses of the district," is likewise a special tax levied upon lands, instead of being levied upon all property generally within the district, and no hearing is accorded to the property owner for this form of tax. Laws 1925, p. 365, sec. 36. (4) The act impairs the obligation of contracts in the matter of re-assessment of benefits and damages from time to time, making possible the reduction of taxes to such an extent that the amount produced would be insufficient to take care of interest and sinking fund requirements on bonds issued by the district. Laws 1925, p. 366, sec. 37; Constitution, art. 2, sec. 15; Constitution of United States, art. 1, sec. 10.

*Seneca C. Taylor* and *Wm. J. Kiely, amici curiae.*

(1) It took a constitutional provision to separate the city of St. Louis from St. Louis County, and it will require something of a like kind to change the present situation. (2) If situations arise which require local or special legislation, then Sec. 54, Art. IV. of the Constitution, applies, and this section requires published notice for at least thirty days before such a bill can be introduced in the Legislature. The purpose of this was to give all persons interested a right to appear and be heard before the enactment of the law. It is a sensible restriction, and applies to this case. (3) This Act of 1925 applies solely to St. Louis County. If sewer districts can be organized

as are drainage districts, then there is no reason why a general law cannot be passed to provide for the organization of such sewer districts in the rural sections. No reason appears for having sewer districts in St. Louis County organized differently from sewer districts in other counties. In this matter the Legislature cannot single out one county alone, as has been done here. The law is special and local, and no notice of its intended introduction was given. It is special and local, because a general law could be made applicable to sewer districts. The act clearly violates both Secs. 53 and 54 of Art. IV of the Constitution.

*E. L. Rothganger, amicus curiae.*

(1) Said act is a special and local law, violative of Section 53 of Article IV of the Constitution, which forbids the enactment of any special or local law where a general law can be made applicable. (2) The law is arbitrary and unreasonable. (3) A special and local law was passed without notice of thirty days before introducing the bill thereof, as provided in Section 54, Article IV, Constitution of Missouri.

*Richard F. Ralph, J. H. Haley, C. G. Baxter, Arthur V. Lashley, Jesse L. Harnage, Greensfelder, Dyott & Grand, Martin J. Rassmussen, L. A. Prichard* and *Charles & Rutherford* for respondents.

(1) Whenever a statute is attacked the courts approach the subject with caution. State ex rel. v. Aloe, 152 Mo. 477; Ex parte v. Loving, 178 Mo. 203. (2) Sewer laws and drainage laws are legally in the same class. And sewer laws, unless clearly unconstitutional, are uniformly upheld. Mound City Land & Stock Co. v. Miller, 170 Mo. 240, 251; St. Louis v. Oeters, 36 Mo. 456; Kansas City v. Ridenour, 84 Mo. 253; St. Joseph v. Owen, 110 Mo. 445; Heman v. Allen, 156 Mo. 534; Heman v. Schulte, 166 Mo. 409. (3) The Sewer Act is not violative of Section 12 of Article X of the Constitution, in that it authorizes the issuance of bonds without the assent of two-thirds of the voters of the district voting at an election held for that purpose. Bonds authorized by this act are not secured by *ad valorem* taxes, but by special assessments, and do not come within the provisions of Section 12 of Article X. Morrison v. Morey, 146 Mo. 564; State ex rel. v. Little River Drain. Dist., 291 Mo. 277; In re Birmingham Drainage Dist., 266 Mo. 60-68; Houck v. Little River Drain. Dist., 248 Mo. 373; Meier v. St. Louis, 180 Mo. 408; Farrar v. St. Louis, 80 Mo. 379; St. Joseph v. Owen, 110 Mo. 445; Mobile Co. v. Kimball, 102 U. S. 691; Levee Co. v. Hardin, 27 Mo. 495; Cooley on Taxation (1 Ed.) p. 444; Construction Co. v. Railroad, 206 Mo. 179; Page &

Jones on Taxation by Assessment, sec. 147. (4) The act does not violate Section 28 of Article IV of the Constitution. The subject is single, and the provisions of the act are clearly indicated in the title. State v. Doerring, 194 Mo. 398; State v. Murlin, 137 Mo. 297; St. Louis v. Tiefle, 42 Mo. 578; Dickason v. County Court, 128 Mo. 427; State ex rel. v. Miller, 100 Mo. 439; Lynch v. Murphy, 119 Mo. 163; Cox v. Railroad Co., 174 Mo. 588; Asel v. City of Jefferson, 287 Mo. 195; State ex rel. Drain. Dist. v. Hackmann, 305 Mo. 685; O'Connor v. Transit Co., 198 Mo. 622. (5) There is no denial of due process. Laws 1925, secs. 3, 4, 11, 12, 29, 30, 34, 37. (a) The provisions of the act with respect to notices and hearings are practically identical with the corresponding provisions of the Circuit Court Drainage Act (Art. 1, Ch. 28, R. S. 1919). The latter has frequently been attacked on this very ground, but always sustained by this court; as, for example, in Elsberry Drain. Dist. v. Harris, 267 Mo. 149; Houck v. Little River Drain. Dist., 248 Mo. 273. (6) The act is not violative of Section 53 of Article IV of the Constitution forbidding the enactment of special or local laws. (a) This legislation rests upon an appropriate and logical and legitimate classification by population. State ex rel. v. Miller, 100 Mo. 439; State ex rel. v. Marion Co., 128 Mo. 427; State ex rel. v. Arnold, 136 Mo. 446; Owen v. Baer, 154 Mo. 434; State ex rel. v. Mason, 155 Mo. 486; Ex parte v. Lucas, 160 Mo. 218; State ex rel. v. Keating, 202 Mo. 197; State ex rel. v. Wurdeman, 254 Mo. 561; State ex rel. v. Southern, 265 Mo. 275; 36 Cyc. 1004; State ex rel. v. Hedrick, 241 S. W. 402; State ex rel. v. Hartmann, 253 S. W. 911. (b) The act is valid because its subject-matter furnishes the basis for the classification. Cases supra. (c) The act is valid because it rests upon the classification, as to subject-matter, growing out of the necessities of the situation. Cases supra. (d) St. Louis County is a constitutional county, under Section 20 of Article IV, in the same way that the city of St. Louis is a constitutional city, and the General Assembly may legislate for said county in any appropriate special case just as it does for the city of St. Louis. (7) The act is not void because it contains a provision for a reascertainment and adjustment of benefits. The courts everywhere recognize the general power to reassess, and for several different reasons. Lambord v. West Chicago Park Co., 181 U. S. 33, 45 L. Ed. 731; Bellingham Bay & British Col. Ry. v. New Whatcom, 172 U. S. 314, 43 L. Ed. 460; Shiloh Street, Wilson's Appeal, 152 Pa. St. 136; Haubner v. City of Milwaukee, 124 Wis. 153, 101 N. W. 930; Ede v. Cuneo, 126 Cal. 167, 58 Pac. 538; State v. Township of Kearney, 48 N. J. 125.

*Robert A. Roessell* and *Robert C. Powell, amici curiae.*

(1)   Section 53, Article IV, of the Constitution, does not prohibit
the General Assembly from passing a statute affecting one class in
particular where a necessity exists justifying this distinction.   Ex
parte Loving, 178 Mo. 194; State v. Swagerty, 203 Mo. 523; State
ex rel. v. Mason, 155 Mo. 505; State ex inf. v. Ins. Co., 150 Mo. 136;
State ex rel v. Arnold, 136 Mo. 450; State ex inf. v. Heidrick, 241
S. W. 419; State ex inf. v. Southern, 265 Mo. 75; State ex rel. v. Miller,
100 Mo. 448; State ex rel. v. Roach, 258 Mo. 563.   (a)   Whether such
a necessity obtains or not is a judicial question to be determined by
the courts.   Cases supra. ▪ (b)   The instant case comes clearly and
forcibly within the meaning of the constitutional provision.   (2)
The reascertainment of benefits and the reassessment thereunder pro-
vided in the statutes does not violate Section 30 of Article II of the
Constitution, or the Fifth Amendment of the Constitution of the
United States, in that proper legal notice for hearing is provided,
giving to all affected their day in court.   (3)   In the determination
of a question involving the constitutionality of a law it is a settled
rule for the guidance of courts that the acts of a 'Legislature are
presumed to be constitutional and it is only where they manifestly
infringe on some provision of the Constitution that they can be de-
clared void for that reason.   In case of doubt every possible presump-
tion, not directly inconsistent with the language and subject-matter,
is to be made in favor of the constitutionality of the act.   State v.
Abel, 65 Mo. 357; Phillips v. Railroad, 86 Mo. 503; State ex inf. v.
Ins. Co., 150 Mo. 136; State ex inf. v. Southern, 265 Mo. 284.

*Nagel & Kirby* and *E. G. Curtis* for the School District of Webster
Groves.

The Ralph Law can apply to St. Louis County alone, unless there
is additional legislation enacted, because this is the only county in the
State adjoining a city now or hereafter having a population of seven
hundred thousand inhabitants or more (in the words of the act) at
the present time.   The rule is well settled that such a law may be
general or may be special, depending "upon the particular matter of
which the Legislature is treating." "To make such a law general there
must be some distinguishing peculiarity which gives rise to a neces-
sity for the law as to the designated class." State ex rel. v. Miller,
100 Mo. 448.   This statement of the law has been approved.   State
ex rel. v. Logan, 268 Mo. 177; State ex inf. Mueller v. Fry, 300 Mo.
551.   St. Louis County is so different from any other county in the
State, because of its unique situation, that the classification made
by this act is reasonable and it, therefore, falls within the rule above

stated. The areas of urban territory are expanding into the county at a very rapid rate. For all practical purposes the entire area within the county next to the limits of the city has already become urban in character with all the improvements required by a thickly settled community. This means that sewage must be taken care of. As it happens, practically all of this territory drains into one watercourse, the River des Peres. The situation is further unique in this: it is all within the county and some of the territory has not yet been organized into municipalities and is governed by the county court. However, very naturally, under the circumstances, various municipalities have been organized which embrace various portions of the county, and, of course, such territory is governed by the municipal authorities of each particular locality. Under these conditions there is no law under which a comprehensive, uniform system of sewers can be constructed, as a practical proposition, except under the Ralph Law, under consideration in this case. It is absolutely impossible to build a system of sewers to take care of the situation. with five different governing bodies with different powers and rights, but of equal dignity in their respective areas. Even if the powers of the various governing bodies were the same and each could pass the same legislation, to take care of its area, at the same time, the practical difficulties would be almost insuperable as is best proven by the fact that they have been trying to do this very thing for many years, but unsuccessfully. The Ralph Law, under consideration here, gives the necessary power to meet the needs of the situation and was welcomed by every forward-looking community of St. Louis County, not only bcause of the power given to cure an intolerable situation, but because of the fairness and reasonableness of the new law.

GRAVES, J.—This suit started (as indicated by the statement of the learned Attorney-General) as a friendly suit to test the validity of an act of the General Assembly for the year 1925, relative to the establishment and maintenance of sewer districts. During the friendly period of the suit, the attorney-general's office represented the State in an attack on the invalidity of the said Act of 1925. The law (Act of 1925) provided for the organization and maintenance of sewer districts as drainage districts are organized under what we call the Circuit Court Act. The Sewer Act will be found in the Laws of 1925 at page 343 et seq.

Distinguished counsel for prospective bond purchasers represented the other side of the controversy. This is to say, they suggest reasons for upholding the act. One of such argued the case here in connection with counsel for special communities in St. Louis County.

Friendliness, however, was not long to continue in the suit. Dissatisfied tax-payers rushed to the assistance of the Attorney-General in his attack upon the law, and interested parties and communities

(all as *amici curiae*) rushed to the assistance of the counsel for prospective purchasers of bonds. So, what appeared to be friendly at first, has turned out to be a real contest. We do not mean to say that the learned Attorney-General did not (in the first instance) fully suggest all the troublesome questions occasioned by this law (for he did), but subsequent briefs by friends of the court (upon both sides) have tended to add spice to the contest. It is frankly conceded that the Act of 1925 applies to no county in the State, save and except St. Louis County. The wording is peculiar in some respects. The act consists of forty sections, and is and was passed as a general law. [Laws 1925, pp. 343 to 367.] The enacting clause reads:

"AN ACT to provide for the incorporation and organization of sewer districts *in any county joining a city now or hereafter having a population of seven hundred thousand or more,* defining the powers of such corporations, providing for the ascertainment of assessments and damages to the lands and other property in such districts, the designing and adoption of sewer plans in such districts and for the issuance of bonds and the levying of taxes by such districts."

The italics are ours. The most material portions of the law are Sections 1, 2, 3, 4, 5 and 6 of the law, which sections read:

"Sec. 1. *Sewer districts—when and where organized.*—That whenever any area of contiguous territory within the limits of any county adjoining a city now or hereafter having a population of seven hundred thousand inhabitants or more is or shall be in need of a system of sewers for sanitary purposes or for the protection of the public health or welfare, a sewer district may be created and organized as herein provided, and such district may be located wholly or partly within the corporate limits of any city, town or village in such county, or wholly outside of such city, town or village.

"Sec. 2. *Freeholders may pray for letters of incorporation—petition, where filed.*—Any one hundred or more adult owners of real estate resident within the limits of such proposed sewer district may file, in the office of the clerk of the circuit court of such county, a petition *ex parte* in which shall be set forth the boundary lines of the proposed district, the name under and by which it shall be known and be incorporated, and the number of years it shall continue as a public municipal corporation; and the said petition shall contain a prayer that the lands and other property within such boundaries be declared a sewer district under the provisions of this act.

"Sec. 3. *Publication of proposed organization—form of notice—when and how made.*—Immediately after such petition shall have been filed with the clerk of said court, the clerk shall give notice by causing publication to be made once a week for two consecutive weeks (that is, by two weekly insertions) in some newspaper published in such county, the first publication of said notice to be at least fourteen

days prior to the day of the hearing on the said petition, and such notice shall be substantially in the following form, which shall be deemed sufficient for all purposes:

"NOTICE OF APPLICATION TO FORM SEWER DISTRICT.

"Notice is hereby given to all persons interested in the lands or other property within the limits hereinafter set out, located in the county of ——————, State of Missouri (here set out the boundary line of the proposed district), that a petition asking that the lands and other property lying within the territory above described be formed into a sewer district under the provisions of an act entitled, —————— passed by the General Assembly of the State of Missouri at its regular session of 1925, approved ——————, 1925, and that the lands and other property in said proposed district will be affected by the formation of said sewer district and be rendered liable to taxation for the purpose of paying the expenses of organizing the district and of making and maintaining the improvements that may be found necessary to afford sewerage facilities and sewerage protection for the lands and other property in said district, and you and each of you are hereby notified to appear in the circuit court of said county on the —— day of ——————, 19—, at the courthouse in ——————, in division —————— thereof, and show cause, if any there be, why said sewer district as set forth and described in this said petition should not be organized as a public municipal corporation of the State of Missouri.

"——————————————————

"Clerk of the Circuit Court, —————— County, Missouri.

"The time for the hearing, as indicated in the said notice, shall be such time as may previously have been designated by the court.

"Sec. 4. *Who may object to organization—court's findings certified by clerk—fees.*—Any owner of real estate or other property in the said proposed district who may not have signed said petition, objecting to the organization or incorporation of said sewer district shall, on or before the day designated for the hearing on the petition, file his objection or objections to the incorporation of such sewer district, but such objection or objections to the incorporation of such sewer district shall be limited to a denial of the necessity or desirability for sewage disposal in the said district and shall be heard by the court in a summary manner without unnecessary delay, and in case all such objections are overruled the circuit court shall, by its order duly entered of record, declare and decree said sewer district a public municipal corporation of this State for a term not exceeding the time mentioned in the said petition. If the court finds that the lands and other property in the territory described in the said petition should not be incorporated into a sewer district, it shall dismiss said proceedings and adjudge the cost against the signers of said petition.

Any person having signed the petition shall have no right to have said proceedings dismissed as to him or withdraw his name therefrom without the written consent of the majority of the signers thereof. The petition may be amended as any other pleading. Within ten days after the said district shall have been decreed a corporation by the court, the clerk thereof shall transmit to the Secretary of State a certified copy of the findings and decree of the court, and the same shall be filed in the office of the Secretary of State. A copy of said findings and decree shall also be filed in the office of the Recorder of Deeds of said county, who shall receive a fee of one dollar for filing and preserving the same.

"Sec. 5. *Board of supervisors—appointment—qualifications— oath—term of office—vacancy, how filled—organization—compensation—must keep seal and make reports.—*At the time of entering the decree of incorporation, or within fifteen days thereafter, the said court shall appoint a board of three supervisors to be composed of owners of lands or other property in the said district, who shall be residents of the State of Missouri. The said appointment shall be for one, two, and three years, respectively, and at the end of their terms the court shall appoint their successors for terms of four years each and until their successors in turn shall have been appointed and qualified. All vacancies in the said board of supervisors shall be filled by the court, and each supervisor shall, before entering upon his official duties, take and subscribe an oath before some officer authorized by law to administer oaths that he will honestly, faithfully and impartially perform the duties devolving upon him in office as supervisor of the sewer district for which he may have been appointed and that he will not neglect any of the duties imposed upon him by this act. Immediately after their appointment, the said board of supervisors shall meet at a time and place which shall have been designated by the clerk of the said court and organize and choose one of their number president of the board, and elect some suitable person to be secretary, who shall be a resident of the said district, but who may be or may not be a member of the board. The board shall also adopt a seal with a suitable device, and shall keep a record of all its proceedings, which shall be open to the inspection of all owners of land and other property in the district, as well as to all other interested parties. The board of supervisors shall annually report to the court what work has been done, either by the engineers or otherwise. The members of the board shall receive, for attending to the business for and in behalf of the district, actual transportation expenses, which shall be audited by the board before payment. They shall receive no compensation for their services unless the court shall authorize it, and in no event shall such compensation exceed five dollars per day for time actually engaged in work for the dis

trict. Provided, however, that the secretary may be allowed such compensation as may be determined by the board of supervisors with the approval of the said circuit court.

"Sec. 6. *Supervisors to appoint a chief engineer—duties of chief engineer and secretary.*—Within thirty days after organizing, the board of supervisors shall appoint a competent civil engineer as chief engineer, who may be an individual, co-partnership or corporation, and who shall engage such assistants as the board of supervisors may approve. The chief engineer shall have control of the engineering work in the district, but may, with the consent of the board of supervisors, consult any eminent engineer or engineers and obtain his or their opinion and advice concerning the plans for sewerage and sewage disposal of the said district. He shall make all necessary surveys of the lands and other property within the district, and shall make a report in writing to the board of supervisors, with maps and profiles of the said survey or surveys, where necessary, which reports shall contain a plan for sewerage and the disposal of sewage and storm waters, if necessary or advisable, and including any necessary outlet or outlets therefor extending beyond the boundaries of the said district; and said maps and profiles shall also indicate, so far as necessary, the physical characteristics of the lands and other property in the district and the location of any public roads, streets, or other highways, railroads and other rights of way, and other property or improvements in the said district. Upon receipt of his final report and surveys of the lands and other property in the district and of the plans for sewage disposal, the board of supervisors shall adopt such report, or any modification thereof approved by the chief engineer after consulting with him, and thereafter such adopted report shall be the plan for sewerage and sewage disposal, and after such adoption it shall be known and designated as 'the sewer plan,' which plan shall be filed with the secretary of the board of supervisors and by him copied into the records of the district."

By this we do not mean that there are not other very material sections, but these show the method of organization, and the respondents in this case constitute the board of supervisors (appointed under Section 5, supra) for the Northwest Maplewood Sewer District of St. Louis County, Missouri. From the briefs other districts are in process of organization, and there is no limit in the law to the number which may be organized within St. Louis County. This general outline will suffice to discuss at least some of the vital questions raised in this original proceeding in *quo warranto* in this court. Other questions, and the particulars of the open-door questions, are left to the opinion, there to be discussed in their order. The pleadings consist of a petition in *quo warranto*, and a return thereto. The return raises largely questions of law.

I.   This proceeding in the County Court of St. Louis County was one to incorporate a sewer district under the Act of 1925, supra.   It is so clearly unconstitutional to our mind that many questions urged need not be discussed at all.   In the first place the Act of 1925 (known as the Ralph Law), a part of which we have quoted, is a law which applies to St. Louis County alone, and can never apply to any other county in the State, without a constitutional amendment. It is true that the title to the act, and the first section thereof (both of which we have quoted) use general language in an attempt to give to the act the color of a general law, rather than a local and special one.   This kind of a camouflage has never worked with this court, and we say this with the greatest respect to the honorable and distinguished Senator for whom the act has been named.   He was in a constitutional hole and was using his best efforts to get out of it.

But to one thought in the case, before taking up the main question.   The city of St. Louis is in a class by itself, and thus pursuant to constitutional authority. [Sec. 20, Art. IX, Constitution of 1875.] By this section of the Constitution the city of St. Louis was authorized, under stated terms, to become a city, wholly without a county, but with many if not most of the powers and duties of a county. Pursuant to the constitutional power, the city of St. Louis was taken from St. Louis County, and the remainder of the territory was automatically made the county of St. Louis.   This was by virtue of the Scheme and Charter adopted in 1876, and since such date the city of St. Louis has been a constitutional city, without the confines of any county in the State, but as said in most respects occupying the status of a county.   [State ex rel. Harris v. Laughlin, 75 Mo. 1. c. 152.]

But we must not overlook the fact that it required a constitutional provision (Sec. 20, Art. IX, supra) to bring about this status, and the further fact that it will require similar action to bring about a similar status as to any other city within the State.   So we have the status of the City of St. Louis, and the County of St. Louis fixed by the direct permit of the people of the State, by and through their Constitution.   Of the location of such city and such county we take judicial knowledge. The city of St. Louis is surrounded by the County of St. Louis.   That we take judicial knowledge of all such facts is firmly fixed in the law.   [State v. Logan, 268 Mo. 169, and the cases cited therein.]   So much for this preliminary question.   As said by Mr. Justice BREWER, in City of St. Louis v. Western Union Telegraph Co., 149 U. S. 465: "The city of St. Louis occupies a unique position.   It does not, like most cities, derive its powers by grant from the Legislature, but it framed its own charter under express authority from the people of the State, given in the Constitution.   [Secs. 20 and 21, Art. 9, Const. of Mo. 1875.]"

Of course it cannot have a charter provision which violates either the Constitution of the State. or any general law of the State. It is further unique in that it was made a city without a county per force of constitutional provisions.

II.   There is an attempt in the enacting clause, as well as in the first section of the law to make a general classification of sewer districts by the use of general language.   The simple use of general

*Special Law.*   terms in the law will not suffice to make a local and special law general, when the very facts detailed in the act, and facts judicially known by the court, show that it is not a general law. [State ex inf. Mueller v. Fry, 300 Mo. 1. c. 547.] The act cannot apply to a county having within its boundaries a city of 700,000 or more inhabitants, because such city would be a part of the county, and therefore the county could not adjoin the city, for the simple reason that the city would be a part and parcel of the county. [State ex inf. Mueller v. Fry, 300 Mo. 1. c. 549 and 550, especially top of page 550.] It would require a constitutional provision authorizing the separation of the city from the rural portion of the county, as in  the case of the city of St. Louis.

III.   It is urged, and for the purpose of this case only it may be conceded, that sewer laws are closely akin to drainage laws as was said by MARSHALL, J., in Mound City Land & Stock Company v. Miller, 170 Mo. 240, 1. c. 251 and 252.   This concession does not help respondents in this case.   St. Louis County is one of the counties of the State, and stands upon the same plane of the other one hundred and thirteen counties.   A valid drainage act applicable to St. Louis County alone could not be passed.   It must be borne in mind that even in the sewer act before us it is not based upon a classification of counties by population.   Nothing is said about population of rural counties, as a basis for classification.   The doctrine of classification by population in the enactment of laws is being much overworked.   We have ruled however that population may be made the basis of classification, provided that the law covers an existing class, a part of which may come into existence by natural growth after the act, provided the legislative classification expressly so provides, by using the term "counties now having, or hereafter having" the stated population.   But this act does not use the population of counties as a basis at all for the legislation.   The subject-matter of the legislation is located in a county, and not elsewhere.   By this act the subject-matter is located in terms by the act in St. Louis County, as if the words St. Louis County had been written out in full therein.   This because we judicially know that no other county can, without legis-

lative or rather constitutional action, ever fall into the class attempted to be created.   [See case cited, supra.]

But as previously said this act deals with the subject of sewer districts in counties (rural sewer districts) and county population is not even suggested either by the title, or by the bill as a basis of classification, and as the whole act shows a legislative intent to pass a law applicable to St. Louis County alone, when a general law, applicable to all counties having rural centers in need of sewerage systems, could well be made applicable, this act must fall under the constitutional inhibition, of Paragraph 32, Section 53, Article IV of the Constitution.   By this paragraph no local or special law can be legally passed by the General Assembly of Missouri, ''where a general law can be made applicable.''   This subject we discuss later.

IV.   Any classification to take an act out of the constitutional prohibition as to local and special laws, must be a classification based upon reasonable and sound grounds.   That is, there must be a sound and reasonable basis for the classification.   There are no doubt many congested centers in rural counties adjacent to our larger cities just as much in need of sewer systems as those rural centers in and near St. Louis, or any other city that might attain the population of 700,000.   There are no doubt such urban centers near St. Joseph, Kansas City, Joplin, Springfield, and even cities of lesser population.   Why leave these out and select only urban and rural centers in St. Louis County?

A general law could be passed, just as general laws have been passed as to drainage districts, and it is conceded that this law is borrowed largely from the Circuit Court Drainage Act.   When the whole act is read there is nothing therein to show that a general law could not be made applicable.   On the contrary it, upon its face, shows that a general law, as we have defined such, could be made applicable. The law purports to deal with sewer districts in rural counties, and a general law could well be passed to either apply to all rural counties, or to some reasonable classification of such counties.   This law is void for this reason.   If there were special conditions in St. Louis County requiring a special or local law to meet them, then Section 54 of Article IV of the Constitution alone is applicable, but no attempt has been made to conform to this provision of the Constitution.   The whole arguments in the briefs go to what counsel term the peculiar conditions of St. Louis County.   We are not impressed that the conditions are so different from other rural communities in the State as to require a special act, but if they are, then the legislation must proceed under Section 54 of Article IV of the Constitution.   Our view is that a general law could be made to cover the situation there, as well as similar situations in other counties.   At least

a reasonable classification of counties could be made, which is not done by the Act of 1925.

True it is that the Constitution, Section 53, Article IV, does not preclude all local and special laws, but such section does preclude legislation upon certain named special subjects, and then in Paragraph 32 of Section 53, supra, prohibits the passage of all special laws where a general law could be made applicable. We have, under this section and paragraph, construed laws to be general rather than special where they apply to a class, and where there is a reasonable basis for making the class, and the determination of this is ultimately lodged with the courts. So we have general laws of two classes, i. e. (1) those that apply to a reasonable and natural class, and (2) those that cover the State as a whole. All other laws are special and local, and if such are passed at all, they must be passed under the terms of Section 54 of Article IV of the Constitution. No case cited by the learned counsel for the respondents goes further than we have just announced.

So in conclusion, we must rule (1) that the Act of 1925 applies solely to St. Louis County, or rather to sewer districts in St. Louis County, giving to citizens of that county rights not conferred upon any other county in the State, and the law is therefore special and local, and void under the Constitution; (2) that the law applies to St. Louis County alone, because, without additional law, either legislative or constitutional, no other counties could ever fall into the class, however large the cities therein might become; (3) that the law undertakes to legislate for rural communities, in counties, and in the attempted classification does not even use the population of counties as the basis of classification, so that question is out of consideration, and (4) a general law could be passed to cover everything in this special act for St. Louis County. We have defined the two kinds of general laws, supra.

So without going into other interesting questions raised, it clearly appears that this law is violative of the Constitution and void. Our writ of ouster should go as prayed by the Attorney-General. It is so ordered. All concur, except *White, J.,* who is absent.