WILLIAM H. REALS, CHARLES P. BALLARD and MAXWELL FINEBERG v. JUNE S. COURSON, Secretary of the Board of Education, School District of University City, and HARRY A. FRANK, T. FRANK WOOD, JOHN J. FITZWILLIAM, WALTER L. METCALF and O. D. NORWINE, Members of and Constituting the Board of Education, School District of University City, St. Louis County, Missouri, Appellants.—164 S. W. (2d) 306.

Division Two, July 28, 1942.

Rehearing Denied, September 8, 1942.

*M. P. Phillips* for appellants.

*Harold C. Ackert* and *Albert Krause* for respondents.

1196

■■■■ BARRETT, C.—The Sixty-first General Assembly enacted the following legislation designed to permit the issuance of bonds so as to provide additional funds for general school purposes (Laws Mo. 1941, pp. 555-556):

"Section 1. The boards of directors of school districts, formed of cities and towns in counties having more than 200,000 inhabitants and less than 450,000 inhabitants and of consolidated school districts in such counties, shall have authority to borrow money and to issue bonds in the manner and subject to the conditions specified in existing law for the purpose of providing funds for general school purposes.

"Section 2. The board of directors of a district issuing bonds under the authority contained in section 1 hereof are authorized to make an estimate for the levy of a tax for the retirement of such bonds and of a tax to pay interest thereon, but the tax for retirement of the bonds issued pursuant hereto shall not in any year exceed one-fifth of one per centum upon all the property of the district at its assessed valuation.

"Section 3. The county clerk of the county in which any school district levying the taxes herein authorized is located, upon receipt of the estimate of the taxes from the board of directors of the district, shall proceed to assess the taxes so returned, in addition to all other

taxes upon the property of the district, in the same manner as other taxes are assessed.

"Section 4. The provisions of this act shall expire January 1, 1946."

Seeking to take advantage of the provisions of the act the School District of University City called a special election to test the wishes of the district's voters as to whether or not they desired to authorize an additional bonded indebtedness in the amount of $80,000 for the purpose of providing further funds for general school purposes. The plaintiff resident taxpayers brought this action to enjoin the holding of the election and the decisive question on this appeal is whether the legislation is unconstitutional as a special or local law (Const. Mo., Art. IV, Sec. 53 (2) (19) (32) ) because applicable to certain school districts in St. Louis County alone as the trial court decreed in enjoining the election.

The School District of University City is a town school district having within its limits a city of the fourth class, with a population in excess of 30,000 and being within St. Louis County which has a population in excess of 200,000 and less than 450,000 inhabitants. At the time the resolution calling the election was passed the district was levying the maximum annual tax for school purposes of $1.38 on the $100 valuation, the $1.00 being for general school purposes (Const. Mo., Art. X, Sec. 11) and the thirty-eight cents for interest and sinking fund. The total bonded indebtedness of the district was then $1,416,000.00 and the assessed valuation of the taxable property in the district $42,561,055.00.

The revenue provided by the maximum tax was inadequate for general school purposes necessitating restrictions and curtailments in certain of the district's activities.

The appellants' contention is that the legislation is not local and special and thus violative of the Constitution because the classification of counties by population (200,000 to 450,000) "does not freeze the class at the present population but is of continuing import and admits or includes any county depending upon the population at the time the power granted by the statute is sought to be exercised" and it is not made so though admittedly based on a classification applicable to one county and district only at the time of its enactment. There being no provision in the statute for determining the population of districts in the future—and thereby their classification—the appellants contend that the true population "established in any authentic manner at the time the action is taken" governs as to whether the district comes within the provisions of the act.

In 1880 we adopted Pennsylvania's distinction between or definition of "special" and "general" laws. "A statute which relates to persons or things as a class, is a general law, while a statute which relates [308] to particular persons or things of a class is special" is the way the matter is roughly and broadly put and that suffices for normal pur-

poses. [Wheeler v. Philadelphia, 77 Pa. St. 338; State ex rel. Lionberger v. Tolle, 71 Mo. 645, 650; State ex rel. Harris v. Herrmann, 75 Mo. 340; Lynch v. Murphy, 119 Mo. 163, 24 S. W. 774; Ex Parte Lucas, 160 Mo. 218, 61 S. W. 218; Davis v. Jasper County, 318 Mo. 248, 300 S. W. 493.] Under this definition it is permissible to classify counties or other political subdivisions according to population, provided the legislation is so drawn that other counties or subdivisions may come within the terms of the law or classification in the future. And this is so even though the act may apply to one county, city or other political subdivision only at the time of its enactment. [Hull v. Baumann, 345 Mo. 159, 131 S. W. (2d) 721; Roberts v. Benson, 346 Mo. 676, 142 S. W. (2d) 1058; Thomas v. Buchanan County, 330 Mo. 627, 51 S. W. (2d) 95; Davis v. Jasper County, 318 Mo. 248, 300 S. W. 493.] For a collection of cases dealing with school laws only see 59 C. J., sec. 363, pp. 772-774.

"A law may be general and yet affect only persons, things, or localities of a particular class" and then the question is as to the propriety of the classification resorted to by the legislature. [59 C. J., Sec. 319, p. 732.] Therefore, merely classifying by population does not in and of itself make the legislation general rather than special. A corollary of the rule is that the classification must rest on some reasonable basis and not upon a purely arbitrary division made solely for the purpose of the legislation in question. Even though the law may purport to be general if the classification by population is unreasonable, unnatural or arbitrary so that it does not apply to all persons or things similarly situated, it is then, in fact, special despite its apparent purpose. [In re City of Lebanon v. Schneider, 349 Mo. 712, 163 S. W. (2d) 588; State ex inf. Barker v. Southern, 265 Mo. 275, 177 S. W. 640.] "The test of a special law is the appropriateness of its provisions to the objects that it excludes. It is not, therefore, what a law includes that makes it special but what it excludes." [State ex inf. Barrett v. Hedrick, 294 Mo. 21, 241 S. W. 402; Colley v. Jasper County, supra; Hull v. Baumann, supra.] The vice in special laws is that they do not embrace all of the class to which they are naturally related. [25 R. C. L., Sec. 66, p. 818.]

Finally, the test is whether the legislative classification "rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed." [State ex rel. Saline County v. Wilson, 288 Mo. 315, 335, 232 S. W. 140.] If in fact the act is by its terms or "in its practical operation it can only apply to particular persons or things of a class, then it will be a special or local law, however carefully its character may be concealed by form of words." [Dunne v. Kansas City Cable Co., 131 Mo. 1, 5, 32 S. W. 641; State ex inf. Gentry v. Armstrong, 315 Mo. 298, 286 S. W. 705; State ex rel. Mosley v. Lee, 319 Mo. 976, 5 S. W. (2d) 83.]

Construing the act as a whole and its practical operation under

the facts of this record and interpreting it liberally, we are of the opinion it is a local or special law within the meaning of the constitutional prohibition against such legislation. [Const. Mo., Art. IV, Sec. 53 (2) (19) (32).] Having stated the conclusion what are the indicia or tokens compelling the view that the classification prescribed by this act relates to a particular political subdivision or thing of a class rather than to political subdivisions or things as a class?.

The act does not say it is applicable to a certain class and such or any other districts "hereafter having" or "containing" a certain population—which is not conclusive—but indicative of a legislative intention that the act is to apply to future districts coming within the class. [Rose v. Smiley (Mo.), 296 S. W. 815; State ex inf. Gentry v. Armstrong, supra.] Yet the general tenor of the language, "The boards of directors of school districts, formed of cities" etc., is broad enough that it is reasonably susceptible of the interpretation and construction that it was intended to and does apply to future districts coming within the class, though the class be established by a certain census and then applicable to one school district only (Thomas v. Buchanan County, supra) except for the fact that Section 4 of the act specifically provides that "The provisions of this act shall expire January 1, 1946." Consequently, by its own terms the act is of limited duration and any other districts coming within the classification of a district in a county of more than 200,000 and less than 450,000 inhabitants must do so in less than five years.

Assuming that this feature of the act (which appears to be unique in the respect now under consideration) does not in and of itself make it applicable for all time and in any event to one county or district only the further fact that the act makes no provision for determining the population of a district or county and the class may therefore be determined by the United States census for 1940 only demonstrates conclusively that no other district than the appellant could ever come within the provisions of the act. The 1940 census shows the population of St. Louis County to be 274,230 (16th Census of the United States, Population of Missouri) and the only county in Missouri of more than 200,000 and less than 450,000 inhabitants. The counties nearest in population being Buchanan County with 94,067 inhabitants on one side and Jackson County with a population of 477,828 on the other side. Consequently, while it is within the realm of possibility that other counties might fall within the prescribed population class it is inconceivable that they may do so within the time limited or that the Legislature contemplated any such radical shift in the population of these or any other counties in the State.

But aside from the possibility of the population of other counties changing so that other school districts might come within the classification we do not believe the legislation so drawn that the class could ever be enlarged. The appellant, without stating how it may be done,

says that since no provision is made for the method of determining the population of the various counties within the specified time that "the true population may be established in any authentic manner at the time action is taken" to vote on whether or not the bonds shall be issued. Its point apparently being that the census merely furnishes the evidence upon which the law operates and that the law itself confers or creates the rights not the number of inhabitants. It is. true the act provides that the number of inhabitants shall determine the class and in that sense is merely the evidence upon which the legislation may operate but that does not answer the question of what evidence is to be used and how the population is to be determined. And in the absence of a provision providing a mode for determining either the present or future population of a county and the act being limited so that future censuses cannot apply it is our view that the legislative classification could only be determined by the United States census of 1940. "The Legislature provided no special statutory method to determine the population of a county under Section 7892 (providing that a county court might also constitute a board of overseers). Absent such a method, the question of population is fixed by the last decennial census." [Hardin v. Jefferson County, 347 Mo. 410, 412, 147 S. W. (2d) 643; Sec. 654, R. S. Mo. 1939, 2 Mo. R. S. A., p. 101; Dunne v. Kansas City Cable Ry. Co., 131 Mo. 1, 32 S. W. 641; State ex inf. Crow v. Evans, 166 Mo. 347, 66 S. W. 355.] Therefore, we have a legislative enactment classifying counties and thereby school districts so that the act can only apply to the counties— in this instance the county, which on the day of its enactment had the requisite population of more than 200,000 and less than 450,000 inhabitants. It can apply to an existing state of facts only, that is to the one county in Missouri then falling within the classification and therefore, in fact, cannot be said to have created a future class into which other counties might fall. [State ex rel. Wiles v. Williams, 232 Mo. 56, 133 S. W. 1; State ex inf. Barker v. Southern, 265 Mo. 275, 177 S. W. 640; State ex rel. Harris v. Herrmann, 75 Mo. 340; State ex inf. Mueller v. Fry, 300 Mo. 541, 254 S. W. 1084; State ex inf. Gentry v. Armstrong, supra.]

█ There is one further token strongly persuasive of the conclusion that this legislation is special and that is "a general law can be made applicable" and "whether a general law could have been made applicable in any case is a judicial question." [Const. Mo., Art. IV, Sec. 53 (32); In re City of Lebanon v. Schneider, supra.]

The act in question permits the borrowing of money and the issuance of bonds for the specific purpose "of providing funds for general school purposes" in districts formed of cities and towns in counties having more than 200,000 and less than 450,000 inhabitants. The bonds which may be issued and the taxes which may be levied by school districts for general school purposes—as well as other school

purposes—has long been the subject of general laws—both legislative and constitutional. For only a few see Const. Mo., Art. X, Secs. 11 and 12; Chap. 72, R. S. Mo. ▮▮▮▮ 1939, especially Secs. 10366 and 10395. The present law applies to St. Louis County, if not to this one school district, alone and doubtless there are other counties containing school districts to which such a law could and even should be applicable because of the inadequacy of its funds for general school purposes, or on account of population or for other reasons. As was said in Rose v. Smiley, 296 S. W. 815, l. c. 816:

"Manifestly, there are other counties in the state to which a general law could be applicable. The construction of sanitary sewers may be necessary in many counties of the state, on account of the population and other considerations. If, therefore, this act on its face is made applicable to St. Louis County only, it is in contravention of that clause of the Constitution."

Or as was said of the sewer district law in State ex inf. Gentry v. Armstrong, 315 Mo. 298, l. c. 311, 286 S. W. 705, l. c. 708:

"A general law could be passed, just as general laws have been passed as to drainage districts, and it is conceded that this law is borrowed largely from the Circuit Court Drainage Act. When the whole act is read there is nothing therein to show that a general law could not be made applicable. On the contrary it, upon its face, shows that a general law, as we have defined such, could be made applicable. The law purports to deal with sewer districts in rural counties, and a general law could well be passed to either apply to all rural counties, or to some reasonable classification of such counties. This law is void for this reason."

The act in question, as the act permitting the enlarging of school districts in certain counties, "grants rights to a class of persons in a single county radically different from those possessed by others in other city and town school districts in the State." And, "it cannot be assumed that the conditions in the city and town school districts in this county of 75,000 inhabitants and adjoining a city of over 300,000 inhabitants are so unlike those in all other counties, as to demand a law radically different from the general law by which the others must be governed." [State ex inf. Mueller v. Fry, 300 Mo. 541, 551, 552, 254 S. W. 1084; State v. Logan, 268 Mo. 169, 186 S. W. 979.] In the respect that the law in question applies to school districts in St. Louis County only and could or even should be equally applicable to other counties it includes less than all other counties and school districts similarly situated and is therefore special and violative of the Constitution. [Const. Mo., Art. IV, Sec. 53 (32); Hull v. Baumann, supra; Colley v. Jasper County, supra.]

For these reasons the judgment of the trial court is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.