THE STATE EX REL. GEORGE MOSELEY ET AL. v. J. F. LEE ET AL., Appellants.—5 S. W. (2d) 83.

Division One, April 11, 1928.

978

*Howard Gray* for appellants.

*Frank R. Birkhead* for respondents.

SEDDON, C.—This suit was commenced in the Circuit Court of Jasper County by the relators (respondents here), as taxpayers of Jasper County, Missouri, to recover for and on behalf of said county, and from the defendants (appellants here), who were, on June 30, 1923, the duly qualified and acting judges of the county court of said county, the respective sums of $600 paid to each of said defendants, and received by defendants, who claimed to be the constituted

board of road overseers of said county, as compensation for their services as members of said board for the first six months of the year 1923. Relators also seek injunctive relief, and they ask that defendants, and each of them, be restrained and enjoined from receiving further warrants of the county in payment of compensation for services as members of the board of road overseers of said county. By stipulation of the parties, the venue of the action was changed to the Circuit Court of Lawrence County, where the cause was tried and submitted, and where judgment was entered.

The petition herein is as follows:

"Plaintiffs state that they are and were at all the times hereinafter mentioned taxpayers of Jasper County, Missouri, and that they bring this action for themselves and other taxpayers of Jasper County, and for their cause of action state that at all times hereinafter mentioned the defendant J. F. Lee was the duly qualified and acting Presiding Judge of the County Court of Jasper County, Missouri, and the defendants J. H. Haworth and Henry McFerrin were the duly qualified and acting associate judges of said court.

"Plaintiffs further state that on the 30th day of June, 1923, the defendants and each of them unlawfully caused a county warrant to be drawn on the County Treasurer of Jasper County, Missouri, for the sum of $600 each; said Warrant No. 54 for $600 being drawn in favor of J. F. Lee, and Warrant No. 55 for $600 being drawn in favor of Henry McFerrin; and Warrant No. 56 for $600 being drawn in favor of J. H. Haworth, and that the said defendants, and each of them, on said date presented said warrants so illegally drawn as aforesaid to the County Treasurer of Jasper County, Missouri, and caused said County Treasurer to immediately cash said warrants, and the said County Treasurer did pay to each of said defendants the sum of $600 by reason of said warrants being so illegally drawn as aforesaid, and which said amounts were paid by said treasurer out of funds belonging to the revenue funds of Jasper County.

"Plaintiffs further say that said warrants were drawn illegally and without authority of law, and were drawn and accepted and cashed by defendants as aforesaid upon the claim of defendants that they were entitled to said sum for salary as board of road overseers of Jasper County, Missouri, for the first six months of the year of 1923; but plaintiffs say that there was no such office in Jasper County, Missouri, during said time, and that the defendants were not entitled to any salary as a board of road overseers.

"Plaintiffs further state that said defendants, and each of them, are claiming that they and each of them are entitled to the sum of $100 per month salary as members of the board of road overseers as aforesaid, and that defendants are threatening to and will, unless restrained and enjoined by order of this court, continue to draw war-

rants for salary as members of the board of road overseers at the rate of $100 per month each, and have same paid by the County Treasurer out of funds belonging to Jasper County, illegally and by violation of law; and that plaintiffs will suffer irreparable injury by having the funds of said county unlawfully diverted as aforesaid by defendants, for which the plaintiffs have no adequate remedy at law.

"Wherefore, plaintiffs pray that the defendants and each of them be made to account for and pay into the treasury of Jasper County, Missouri, the said sum of $600 received by each defendant unlawfully as aforesaid, and that the court may determine what salary, if any, the defendants are entitled to as members of the said board of road overseers, and, if the court should find that the defendants are entitled to any salary, that said amount be computed by the court and that the defendants and each of them be required to account to plaintiffs for any excess so received; that the defendants, and each of them, be restrained and enjoined from issuing to themselves, as members of the board of road overseers, any further warrants or salary as aforesaid during the pendency of this suit, and that on trial of this cause said injunction be made permanent, and that the court render judgment against defendants and each of them for all sums found to have been unlawfully received as aforesaid, and that plaintiffs have such other and further relief as to the court may seem just and proper in the premises."

The joint answer of defendants is as follows:

"Now on this day come the defendants in the above entitled cause, and for their answer to the petition of the plaintiffs herein, admit that the plaintiffs were at all times mentioned in their petition, and now are, taxpayers of Jasper County, Missouri; that the defendants at all said times were, and now are, the judges of the County Court of Jasper County, Missouri, duly qualified and acting as such judges.

"The defendants admit that on the 30th day of June, 1923, they caused warrants of said county to be issued to them, as alleged in plaintiffs' petition, but deny that said warrants were illegally issued, and allege that said warrants were issued to them for salaries as members of the board of road overseers of said county, for the first six months of 1923, under the provisions of Section 10684 of the Revised Statutes of Missouri for the year 1919. . . .

"The defendants, further answering the plaintiff's petition herein, state that they join with the plaintiffs in asking this court, exercising its superintending control over the county court under the provisions of the Constitution of this State and the laws enacted thereunder, to determine what salaries and compensations the defendants are entitled to as members of the board of road overseers of said county.

"These defendants further answering state that they believe that the act of the (51st) General Assembly of the State of Missouri, found on page 593 of the Session Acts (of 1921) of said State, which attempts by implication to repeal or modify the said section of the statutes above set forth, is unconstitutional and is an arbitrary classification and a special law in a matter in which a general law could be made applicable.

"These defendants further allege that an alleged act of the 52nd General Assembly of the State of Missouri, found on page 336 of the Session Acts of the year 1923 of Missouri, known as Senate Bill No. 15, and purporting to be an act amending, by implication, said statute and the said alleged act of the General Assembly of 1921, is unconstitutional, and that an alleged act of the 52nd General Assembly, found on page 334 of said Session Acts and known as Senate Bill No. 14, and also purporting to amend said Section 10684 of the Revised Statutes of the State of Missouri, is likewise unconstitutional, and that an act of said General Assembly found on page 337 of said Session Acts of 1923, likewise purporting to amend, by implication, said section of the Revised Statutes, is unconstitutional for like reason.

"These defendants further state that all three of said alleged acts (of 1923) last mentioned were enacted at the same session of the General Assembly and should be read as one act, and are properly one act, and show that each and all of them are but an illegal effort to enact a special or local law by the partial repeal of a general law, and to pass a special law applicable only to Jasper County, and were amended and designed and so written that they could only apply to said county, and so written that, unless amended by some act of the General Assembly, said county of Jasper would be the only county in the State of Missouri having more than 50,000 inhabitants and under 200,000 inhabitants to which said law requiring road overseers would not apply.

"Wherefore, these defendants having fully answered, ask the court to declare all of said acts of the General assembly found in the Session Acts of 1921 and 1923, to be unconstitutional, and that this court proceed to determine what salaries and compensations these defendants are entitled to as said road overseers."

The reply denies generally the averments of the answer.

The cause was submitted upon an agreed statement of facts, made in open court, as follows:

"It is agreed in open court, by and between counsel for the plaintiffs and defendants, that J. F. Lee, J. H. Haworth and Henry McFerrin are the legally elected and duly qualified and constituted County Court of Jasper County, Missouri. That as such officers they took office on the first day of January, 1923. That on the 30th day

of June, 1923, they issued to themselves three county warrants, number 54 being drawn in favor of J. F. Lee for the sum of six hundred dollars; number 55 being drawn in favor of Henry McFerrin in the sum of six hundred dollars, and number 56 being drawn in favor of J. H. Haworth in the sum of six hundred dollars. That these warrants were drawn for salary solely as road commissioners of Jasper County, Missouri, and not as county judges. That these warrants were cashed the same day, being June 30, 1923. That immediately after that proceeding these plaintiffs brought a proceeding or action restraining the members of the board of commissioners, or road overseers, of Jasper County, Missouri, from drawing any other warrants as such, and requesting in their petition that the said money so drawn be returned to the treasury of Jasper County.

"It is agreed in open court, by and between counsel for plaintiffs and defendants, that Jasper County has 75,941 population by the 1920 decennial census. That Jasper County has macadamized, paved and rock roads, actually built or under construction, of more than fifty miles at the time respondents went into office and at the time of the warrants. That the total taxable wealth of Jasper County, at the time that they went into office, and at the time the warrants were drawn, was over fifty million dollars, to-wit, $63,793,923.

"It is further agreed that this salary drawn by the members was solely as a salary as road overseers of Jasper County.

"It is admitted that plaintiffs are tax-paying citizens and residents of Jasper County, Missouri, and it is further agreed that the defendants intend to draw additional warrants on this fund unless restrained.

"It is further agreed that Greene County, at the times mentioned, had an assessed valuation of $65,459,000, and that the population under the decennial census of 1920 was 68,698.

"It is further agreed in open court that the assessment given for Jasper County, and agreed to in this case, was the assessment for 1923.

"It is further agreed that Buchanan County has a population, as determined by the decennial census of 1920, of 93,684, an assessed valuation of $123,361,498, and that all three of these counties had more than fifty miles of macadamized road at the time.

"It is further admitted that in 1919, when Section 10684 was enacted, Jasper County had more than two hundred miles of macadamized roads, and according to its assessed valuation and population came within the provisions of that act, and the present county court organized as road overseers as required by the statute, and have taken the money under that organization.

"It is agreed that Jasper County had the population, the assessed valuation and the road mileage specified and required by the Act of

1921, at the time it was passed, and at the time the warrants were drawn, and if that law is constitutional it applied to Jasper County."

Thereupon, the Circuit Court of Lawrence County ordered, adjudged and decreed "that the relators, for the use and benefit of Jasper County, Missouri, have judgment against the defendants in the sum of three hundred dollars, and that the defendants be, and they are, each of them, perpetually enjoined from paying themselves or collecting any salary as a county board of road overseers of Jasper County, Missouri, after June 30, 1923." The judgment taxed the costs of the action against defendants, and awarded relators a writ of execution.

In due time, defendants filed their motion for a new trial, which motion was overruled by the circuit court, and thereupon defendants were allowed an appeal to this court from the judgment entered *nisi*. We take jurisdiction of the appeal by reason of the constitutional questions raised by the pleadings and preserved at the trial below and in the motion for a new trial. [Art. VI, sec. 12, Mo. Const.]

The instant cause involves the consideration and construction of five separate statutes, or legislative acts, namely: (1) Section 10684, Revised Statutes 1919; (2) an act of the General Assembly approved on April 7, 1921 (Laws 1921, p. 593); (3) an act of the General Assembly approved and effective on March 14, 1923 (Laws 1923, p. 334); (4) an act of the General Assembly approved on March 14, 1923, and effective on June 25, 1923 (Laws 1923, p. 336); and (5) an act of the General Assembly approved and effective on April 2, 1923 (Laws 1923, p. 337); all relating to the board of road overseers in certain counties of the State.

Section 10684, Revised Statutes 1919, provides: "The judges of the county courts in all counties in this State which now have, or may hereafter have, a population of not less than 50,000 nor more than 200,000 inhabitants, and which now have, or may hereafter have, more than two hundred miles of macadamized or rock public roads, and which now have, or may hereafter have, a total taxable wealth of over twenty-five million dollars and not containing a city of the first class, shall be and constitute a board of road overseers for such counties for the purpose of seeing that the fund provided for by subdivision two of Section 12866 shall be expended as provided in said second subdivision of said Section 12866, and for the purpose of seeing that the roads contemplated by said subdivision of said section are each and every one kept in good repair, and for the purpose of personally viewing new road and bridge sites which are the subject of petitions for improvement, and for the purpose, through personal supervision, of seeing that all road improvements are completed in a good and workmanlike manner, and that all work of every kind done on the county roads is done in a proper workmanlike manner. Each

member of said board shall, as compensation, solely for his services as such road overseer, receive *a salary of twelve hundred dollars per annum* to be paid by the county, monthly, in equal monthly installments out of the fund mentioned in said subdivision 2 of Section 12866. . . ." (Italics ours.) The defendants (appellants herein) claim the right to receive the salary, and to perform the services as members of the board of road overseers of Jasper County, prescribed by the foregoing statute.

The Act of April 7, 1921 (Laws 1921, p. 593), provides: "The judges of the county courts in all counties in this State which now or may hereafter have a population of not less than 75,000 inhabitants, nor more than 100,000 inhabitants, and which now or may hereafter have fifty miles or more of macadamized, paved or rock public roads, actually built or under construction outside of any city therein, and which may now or hereafter have a total taxable wealth of over fifty million dollars, shall be and constitute a board of road overseers for such counties," for purposes similar to those mentioned in said Section 10684, Revised Statutes 1919. The said act further provides that "each member of said board shall receive as compensation, solely for his services prescribed herein as a member of said board, *a salary of one thousand dollars per annum* to be paid by the county in equal monthly installments out of any of the ordinary revenue of the county or out of the fund mentioned in subdivision two, of Section 12866, Revised Statutes of 1919." (Italics ours.)

One of the acts of March 14. 1923 (Laws 1923, p. 334), by its terms amended said Section 10684, Revised Statutes 1919, by striking out the figures "50,000" in line 3 of said section, and inserting in lieu thereof the figures "90,000," so that said Section 10684, Revised Statutes 1919, as amended, shall be applicable to "all counties in this State which now have, or may hereafter have, a population of not less than 90,000 nor more than 200,000 inhabitants," and by adding to said section the further clause, "the population of every such county to be determined by the last preceding decennial census."

The other act of March 14, 1923 (Laws 1923, p. 336), amended the said Act of 1921 (Laws 1921, pp. 593, 594) by striking out the figures "75,000" in line 3, Section 1 of said act, and inserting in lieu thereof the figures "90,000," so that said Act of 1921, as amended, shall be applicable to "all counties in this State which now or may hereafter have a population of not less than 90,000 inhabitants nor more than 100,000 inhabitants," and by adding to Section 1 of said Act of 1921 the further clause, "the population of every such county to be determined by the last preceding decennial federal census."

The third act of 1923, approved and effective on April 2, 1923 (Laws 1923, p. 337), provides: "The judges of the county court in all counties in this State which now or may hereafter have a popula-

tion of not less than 50,000 inhabitants, nor more than 75,000 inhabitants, the population of every such county to be determined by the last preceding decennial federal census, and which now or may hereafter have fifty miles or more of macadamized, paved, or rock public roads, actually built or under construction outside of any city therein, and which may now or hereafter have a total taxable wealth of over fifty million dollars, shall be and constitute a board of road overseers for such counties," for purposes similar to those mentioned in Section 10684, Revised Statutes 1919, and in the Act of April 7, 1921. The said act further provides that "each member of said board shall receive as compensation, solely for his services prescribed herein as a member of said board, *a salary of twelve hundred dollars per annum* to be paid by the county, in equal monthly installments out of any of the ordinary revenue of the county or out of the fund mentioned in subdivision two, of Section 12866, Revised Statutes of Missouri, 1919." (Italics ours.)

I. It is agreed by the parties herein that Jasper County falls within all of the several requirements both of Section 10684, Revised Statutes 1919, and of the Act of April 7, 1921; that is to say, the requisite population of said county in the year 1923 was more than 75,000 (to-wit, 75,941) and was less than 100,000; the requisite mileage of macadamized or rock public roads in said county was more than 200; the requisite total taxable wealth of said county was more than $50,000,000 (to-wit, $63,793, 923;) and said county does not contain any city of the first class (Joplin, the largest city therein, being a city of the second class). Jasper County therefore measuring up to all of the requirements of Section 10684, Revised Statutes 1919, and likewise fulfilling all of the requirements of said Act of 1921 (Laws 1921, p. 593), which of those two statutes fixed and determined the salary of the defendants as members of the board of road overseers of said county on January 1, 1923, when defendants took their respective offices as judges of the county court of said county, and prior to the enactment and taking effect of the three legislative acts of 1923, aforementioned? That is the first question herein presented for our ruling and determination.

The respondents, on the one hand, contend that the said two statutes (inasmuch as both, by their respective requirements, are applicable to Jasper County) are irreconcilably in conflict; that both cannot stand; and, hence, that the said Act of 1921 must be held to have superseded and repealed *pro tanto* (if not expressly, then by implication) Section 10684, Revised Statutes 1919. The appellants, on the other hand, contend that the said Act of 1921 and Section 10684, Revised Statutes 1919, are statutes *in pari materia,* and,

therefore, that Section 10684, Revised Statutes 1919, and the said Act of 1921, must be read and construed together as one single and complete statute or law, which reading and construction of the two statutes clearly manifests the intention of the Legislature that Jasper County is to remain subject to all of the provisions of Section 10684, Revised Statutes 1919, unaffected by any of the provisions of said Act of 1921.

It is apparent that the Act of April 7, 1921 (Laws 1921, p. 593), does not, by its terms, directly or expressly repeal any prior and existing law or statute of the State. The object and purpose of said Act of 1921, as reflected in both the title and the context, is to *create* (i. e., to bring into being; to cause to exist) a board of road overseers "in all counties in this State which now or may hereafter have a population of not less than 75,000 inhabitants nor more than 100,000 inhabitants, and which now or may hereafter have fifty miles or more of macadamized, paved or rock public roads, actually built or under construction outside of any city therein, and which now or may hereafter have a total taxable wealth of over fifty million dollars." The reason for the enactment of said Act of 1921 is equally apparent. The prior and existing statute (Sec. 10684, R. S. 1919), by reason of its peculiar terms, excluded Buchanan County from its operation and effect, because the existing statute was applicable only to counties having more than 200 miles of macadamized or rock public roads, and not containing a city of the first class. The city of St. Joseph, in Buchanan County, was then, and still is, a city of the first class, a fact of which we take judicial notice. [23 C. J. p. 84, sec. 1868, and cases cited.] In order, therefore, that Buchanan County (which county contained a city of the first class, and which county apparently had less than 200 miles of macadamized or rock public roads, and, by reason thereof, was excluded from the operation and effect of Sec. 10684, R. S. 1919) might likewise have a board of road overseers, Senator Lysaght, who resided in Buchanan County and who represented that county in the General Assembly, introduced Senate Bill No. 307 in the 51st General Assembly (Senate Journal, 51st General Assembly, vol. 1, p. 132), which bill was thereafter enacted by that General Assembly and was approved by the Governor on April 7, 1921. [Laws 1921, pp. 593, 594.] So it appears to be reasonably clear that it was not the intent and purpose of the General Assembly, in enacting said Act of 1921, to include Jasper County within the requirements and provisions of said Act of 1921, because Jasper County was then included within the requirements and provisions of Section 10684, Revised Statutes 1919, but rather to *create*, or to bring into being and existence, a board of road overseers for Buchanan County, because Buchanan County was excluded from, and by, the peculiar and specific requirements and provisions of Section 10684, Revised Statutes 1919.

Inasmuch as the aforesaid Act of 1921 does not, by its terms, directly or expressly repeal Section 10684, Revised Statutes 1919, does said Act of 1921, by necessary implication, supersede and repeal *pro tanto* said Section 10684? The repeal of statutes by implication is not favored by the courts. [36 Cyc. 1071; Road District v. Huber, 212 Mo. 551, 562; State ex rel. v. Bishop, 41 Mo. 16, 24.] The question of repeal is one of intention (Curtwright v. Crow, 44 Mo. App. 563, 568), and the presumption is always against the intention to repeal by implication where express terms are not used. [36 Cyc. 1071, 1072; Gasconade County v. Gordon, 241 Mo. 569, 582; State ex rel. v. County Court, 41 Mo. 453, 459.]

In 36 Cyc. 1073-1079, it is said: "Where two legislative acts are repugnant to, or in conflict with, each other, the one last passed, being the latest expression of the legislative will, must govern, although it contains no repealing clause. But it is not sufficient to establish such repeal that the subsequent law covers some, or even all, of the cases provided for by the prior statute, since it may be merely affirmative, or cumulative, or auxiliary. Between the two acts there must be plain, unavoidable, and irreconcilable repugnancy, and even then the old law is repealed by implication only *pro tanto*, to the extent of the repugnancy. If both acts can, by any reasonable construction, be construed together, both will be sustained. Two statutes are not repugnant to each other unless they relate to the same subject. Furthermore, it is necessary to the implication of a repeal that the objects of the two statutes be the same. If they are not, both statutes will stand, although they may refer to the same subject. When two statutes cover, in whole or in part, the same subject-matter, and are not absolutely irreconcilable, no purpose of repeal being clearly shown, the court, if possible, will give effect to both. Where, however, a later act covers the whole subject of earlier acts and embraces new provisions, and plainly shows that it was intended, not only as a substitute for the earlier acts, but to cover the whole subject then considered by the Legislature, and to prescribe the only rules in respect thereto, it operates as a repeal of all former statutes relating to such subject-matter, even if the former acts are not in all respects repugnant to the new act. But in order to effect such repeal by implication it must appear that the subsequent statute covered the whole subject-matter of the former one, and was intended as a substitute for it. If the later statute does not cover the entire field of the first and fails to embrace within its terms a material portion of the first, it will not repeal so much of the first as is not included within its scope, but the two will be construed together, so far as the first still stands."

An analysis and comparison of the two statutes aforesaid reveals that the later Act of 1921 does not cover the entire field of the earlier

statute (Sec. 10684, R. S'. 1919), and fails to embrace within its terms material portions, or requirements, of the earlier statute; for instance; the later Act of 1921 applies only to counties then or thereafter having a population of 75,000 to 100,000 (inclusive) inhabitants, and then or thereafter having *fifty miles*, or more, of macadamized, paved, or rock public roads actually built or under construction outside of any city therein, whereas the earlier statute applies to all counties then or thereafter having a population of 50,000 to 200,000 (inclusive) inhabitants, and then or thereafter having more than *two hundred miles* of macadamized or rock public roads. It is readily apparent that the scope, or field, of the later statute of 1921 is much narrower than is that of the earlier statute, and, in our opinion, it seems equally apparent that it was not intended by the Legislature as a substitute for the earlier statute. Wherefore, the two statutes must be read and construed together as one entire law, and all of the requirements and provisions (including the provisions prescribing and fixing the amounts of annual salary to be paid to each of the members of the board of road overseers) of each of the two statutes must be construed as being in full force and effect, unless they be irreconcilably and unavoidably repugnant.

In the early case of State ex rel. v. Draper, 47 Mo. 29, 33, Judge BLISS, speaking for this court, said: "But, while repugnant statutes necessarily supplant previous ones, they must be clearly repugnant; for unless the legislative intent is expressed in terms, it will not be assumed if any other construction can be given to the subsequent act. . . . This principle is as clearly recognized as the necessity of implied repeals, and arises from the duty of courts to give effect to the legislative will in all cases where it can be done; and when such will is expressed in two different acts, one will not be disregarded if it can stand with the other; if not, it is but natural to infer that the later is intended to supersede the earlier."

In our judgment, Section 10684, Revised Statutes 1919, and the aforesaid Act of April 7, 1921, are not so clearly, unavoidably and irreconcilably repugnant that we must say and rule that the later Act of 1921, by necessary implication, supersedes and repeals *pro tanto* the earlier statute, for we believe that both can stand in their entirety. It was undoubtedly the intention of the Legislature, in enacting the aforesaid Act of 1921, to *create*, and to bring into existence and being, a board of road overseers for Buchanan County, and such other counties of the State as then or thereafter may fall within the requirements of said Act of 1921, but which counties did not meet the particular and peculiar requirements of Section 10684, Revised Statutes 1919, and which counties were therefore excluded thereby. On the other hand, it is likewise evident, in our opinion, that it was not the intention of the Legislature, in enacting said Act of

1921, to exclude any county (including Jasper County) then within the operation and the requirements of Section 10684, Revised Statutes 1919, from any of the provisions of that section. Looking to the course pursued by the immediately following General Assembly of 1923, it is evident that that Assembly did not regard said Section 10684, Revised Statutes 1919, as having been impliedly repealed *pro tanto* by said Act of 1921, for the Assembly of 1923, in amending said Section 10684 (Laws 1923, p. 334), and in separately amending the said Act of 1921 (Laws 1923, p. 336), treated and dealt with the two statutes aforesaid as being two separate, distinct and unconflicting laws, and viewed both of said statutes as being in full force and effect, and the former and earlier statute as being unaffected in its operation by the later Act of 1921. Such fact is persuasive, at least, that the Assembly of 1923 did not consider Section 10684, Revised Statutes 1919, as having been impliedly repealed *pro tanto* by the Act of 1921. [City of Huntsville v. Eatherton, (K. C. C. A.), 182 S. W. 767, 769; State ex rel. v. Wardell, 153 Mo. 319, 325.] If, therefore, it was not the intention of the Legislature, in enacting said Act of 1921, to exclude Jasper County from the operation of any of the provisions of Section 10684, Revised Statutes 1919, then the defendants and appellants herein, as members of the board of road overseers of said county, are each entitled to the annual salary of $1200 prescribed by said Section 10684, Revised Statutes 1919, from January 1, 1923, until such time as the said salary may be changed by statute, or until said board of road overseers of Jasper County be legally abolished.

Moreover, there is another and further reason why we believe that Section 10684, Revised Statutes 1919, must be construed as being unaffected in its operation by the later Act of 1921, insofar as said Section 10684 is applicable to Jasper County. A statute will not be given a construction which will make it unreasonable, or which will result in an absurdity. [Stack v. Baking Co., 283 Mo. 396, 410, and cases cited; Johnston v. Ragan, 265 Mo. 420, 435.] If said Act of 1921 be construed as impliedly excluding Jasper County from the operation and provisions of said Section 10684, as contended by respondents, such construction, we think, is unreasonable and results in an absurdity, in that such construction amounts to saying that the Legislature intended that a county with less than 75,000 inhabitants and more than 50,000 inhabitants, and having a total taxable wealth only slightly in excess of $25,000,000, but with more than 200 miles of macadamized or rock roads, shall pay each member of its board of road overseers an annual salary of $1200, while a county like Jasper County, with more than 200 miles of macadamized or rock roads, and having a population of more than 75,000 inhabitants and a total taxable wealth of

approximately $64,000,000, may pay each member of its board of road overseers an annual salary of only $1000 per year. We do not believe that the Legislature so intended. If, on the other hand, said Act of 1921 be construed as creating and bringing into existence a board of road overseers for those counties (such as Buchanan County) which, prior to the enactment of said Act of 1921, did not fall within the peculiar requirements of Section 10684, Revised Statutes 1919, and which were therefore excluded by said section, then the two statutes are in harmony, and each statute stands alone, as respecting its operation, unaffected by the other. Such a construction of the two statutes is the more reasonable, we think, and accords with the apparent intent and object of the Legislature in enacting the respective statutes. Hence, we conclude and rule herein that Section 10684, Revised Statutes 1919 (within the peculiar requirements of which section Jasper County fell prior to the enactment of said Act of 1921), is the controlling statute which determines and fixes the annual salary ($1200) payable to each member of the board of overseers of said county.

II. The next question presented for our ruling and determination is, What effect did the enactment of the three acts of 1923, aforesaid, have upon Section 10684, Revised Statutes 1919, and said act of April 7, 1921; and are the three acts of 1923, aforesaid, unconstitutional as being in derogation of certain sections of the Constitution of this State? Appellants contend that said three acts of 1923 are statutes *in pari materia*, and, therefore, they must be considered and construed together as sections of one single act; and, when so construed, that they contravene Subsection 32, of Section 53, Article IV, of our Constitution, which provides: "In all other cases where a general law can be made applicable, no local or special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined, without regard to any legislative assertion on that subject;" and that they also contravene Subsection 33, of Section 53, Article IV, of the Constitution, which provides: "Nor shall the General Assembly indirectly enact such special or local law by the partial repeal of a general law."

It is apparent that the three acts of 1923, aforesaid, each and all deal with the same and identical subject (namely, the board of road overseers) dealt with in said Section 10684, Revised Statutes 1919, and in said Act of April 7, 1921. All said three acts of 1923 were enacted at the same session of the General Assembly, two of said acts having been approved by the Governor on the same day, and the third act having been approved by the Governor nineteen days later.

Relating, as they do, to the same subject, and therefore being statutes *in pari materia,* said three acts of 1923 must be construed together as though they constituted one act. [Gasconade County v. Gordon, 241 Mo. 569, 582; State ex inf. v. Amick, 247 Mo. 271, 290; State ex rel. v. Patterson, 207 Mo. 129, 144.] In the Patterson case, supra, this court, en banc, said, quoting approvingly Sutherland on Statutory Construction, section 283: "All consistent statutes relating to the same subject, and hence briefly called statutes *in pari materia,* are treated prospectively and construed together as though they constituted one act. This is true where the acts relating to the same subject were passed at different dates, separated by long or short intervals, at the same session or on the same day." And, in the Gasconade County case, supra, this court, en banc, said, quoting approvingly Black on Interpretation of Laws: "Especially is it the rule that different legislative enactments passed upon the same day or at the same session, and relating to the same subject, are to be read as parts of the same act."

That Section 10684, Revised Statutes 1919, and said Act of April 7, 1921, are general, and not special, laws is well settled by the decisions of this court. In State ex rel. v. Tolle, 71 Mo. 645, 650, the distinction between a general and a special law is thus clearly defined: "A statute which relates to persons or things *as a class* is a general law, while a statute which relates to particular persons or things *of a class* is special." The foregoing definition and distinction has been approvingly cited and followed in the more recent decisions of our court. [State ex inf. v. Southern, 265 Mo. 275, 286; State ex rel. v. Taylor, 224 Mo. 393, 477; Elting v. Hickman, 172 Mo. 237, 257; State ex rel. v. County Court, 128 Mo. 427, 442; Lynch v. Murphy, 119 Mo. 163, 172.] And, although the classification made by a statute is based upon the population, or upon the taxable wealth, of counties or other political subdivisions of the State, such statute is a general law, and not special legislation, if the classification so made rests on a reasonable basis and not upon a mere arbitrary division made only for purposes of legislation, and if such classification is made to apply to all subjects of the class which then, and which may thereafter, fall within its purview. [State ex inf. v. Southern, 265 Mo. 275, 286; State ex rel. v. County Court, 128 Mo. 427, 443; Elting v. Hickman, 172 Mo. 237, 257; State ex rel. v. Wofford, 121 Mo. 61, 69; State ex rel. v. Miller, 100 Mo. 439, 450.]

It is clear, we think, that the classifications made by Section 10684, Revised Statutes 1919, and by said Act of April 7, 1921 (Laws 1921, page 593), relate to counties (having a certain population, a certain taxable wealth, and a certain number of miles of macadamized or rock public roads) *as a class,* and not to particular counties *of a class;* that the classifications made by the two aforesaid statutes rest upon

a reasonable basis, and not upon a mere arbitrary division made only for purposes of legislation; and that such classifications are made to apply to all counties which then, or which may thereafter, fall within such classifications. Hence, under the aforecited decisions of this court, said Section 10684, Revised Statutes 1919, and the said Act of April 7, 1921, are general laws.

According to the decennial census of 1920, the population of Greene County was 68,698, that of Jasper County was 75,941, that of Buchanan County was 93,684, and that of St. Louis County was 100,737. [Official Manual of Mo., 1927-1928, pages 156 to 190.] Every other county in the State had a population of less than 50,000, save and except Jackson County, which had a population largely in excess of 200,000. We take judicial notice of the population of the several counties of the State. [State ex rel. v. Roach, 258 Mo. 541, 561.] Likewise, we take judicial notice that Section 10684, Revised Statutes 1919, and the said Act of April 7, 1921, when construed *in pari materia,* applied (in 1923) to only Greene, Jasper, Buchanan and St. Louis counties. [State ex rel. v. Southern, 265 Mo. 275, 287.] What, then, was the effect and result of the enactment of the series of three acts of 1923, aforesaid, by the 52nd General Assembly? One of those acts (Laws of 1923, page 334) amended Section 10684, Revised Statutes 1919, so as to make said section applicable thereafter only to counties having a population of not less than 90,000 nor more than 200,000 inhabitants; another of those acts (Laws 1923, page 336) amended said Act of April 7, 1921, so as to make said act applicable thereafter only to counties having a population of not less than 90,000 nor more than 100,000 inhabitants; and the third of said series of acts (Laws 1923, p. 337) created (in fact, *re-created*) a board of road overseers in counties having a population of not less than 50,000 nor more than 75,000 inhabitants, and having fifty or more miles of macadamized or rock public roads actually built or under construction outside of any city therein, and a total taxable wealth of over fifty million dollars. The result and effect of the enactment of said series of three acts of 1923 was to leave Greene, Buchanan and St. Louis counties each with a board of road overseers, as theretofore, and to deny to Jasper County, by excluding said county from the classifications made by said three acts of 1923, the board of road overseers which Jasper County had previously had under and by virtue of the provisions of Section 10684, Revised Statutes 1919. In other words, the operation and effect of the enactment of said series of acts of 1923 (which acts, as we have said, must be construed *in pari materia,* as though they were sections of one single act) was to segregate and exclude a single county, Jasper County, which theretofore had been included within the provisions of a general law applicable to several counties, from the operation of such gen-

eral law by the partial or *pro tanto* repeal, by implication, of such general law. The exclusion of Jasper County from the operation of the general law, within the provisions of which general law Jasper County had theretofore been included, was as effectively accomplished by the enactment of said series of laws of 1923 as though the General Assembly had enacted a special or local law, which by its terms had been made applicable to Jasper County alone and to no other county, excluding Jasper County from the general law applicable to several counties, or as though the General Assembly had enacted a law which, by its terms, had expressly repealed the general law only insofar as such general law was applicable to Jasper County. Such legislative action falls within the inhibition of Subsection 33, of Section 53, of Article IV, of the Constitution of this State, that the General Assembly shall not "indirectly enact such special or local law by the partial repeal of a general law."

But it is argued by respondents that the General Assembly of 1923 did not enact a law partially repealing the general law, but merely amended the general law so as to result in the exclusion of Jasper County from such general law. The constitutionality of an act is not to be determined by the mere *form* the act is made to assume, but is to be determined by the *operation* of the act. [Henderson v. Koenig, 168 Mo. 356, 374; State ex rel. v. Herrmann, 75 Mo. 340, 351.]

The case of Henderson v. Koenig, supra, 168 Mo. 356, involved the constitutionality of legislation quite similar in its operation and effect to the legislation involved in the instant case. The Legislature had enacted a general law providing for the establishment of a probate court, consisting of one judge, in the city of St. Louis and in every county of the State. The concluding section of said law provided that "the judge of probate shall receive such fees for his services as now are or may hereafter be allowed by law for probate business," which section of the law thereafter, by revision of the statutes, became Section 3407, Revised Statutes 1889. The Legislature enacted a later law, approved on March 20, 1897, entitled, "An act to repeal Section 3407 of the Revised Statutes of 1889, and to enact in lieu thereof a new section, to be known as Section 3407, Revised Statutes of 1889." The new Section 3407 was identically the same as the old Section 3407, except there was added thereto the proviso, "that in all cities which now have or may hereafter have a population of three hundred thousand inhabitants or more, the judge of probate shall receive such compensation as now is or may hereafter be provided by law to be paid to judges of the circuit courts in such cities out of the city treasury." The new section, with the quoted proviso, under the statute revision, became Section 1764, Revised Statutes 1899. In ruling the later Act of 1897 to be in con-

996

travention of Subsection 33 of Section 53 of Article IV of the Constitution, this court, en banc, said (l. c. 371 et seq.): "Section 3407, as it originally stood in the revision of 1889, provided that: 'The judge of probate shall receive such fees for his services as now are or may hereafter be allowed by law for probate business.' This law as it thus and then stood applied to every judge of probate in the State of Missouri. And if the Legislature, then, without repealing in terms the statute just quoted, had enacted into a law the proviso Section 1764 (R. S. 1899) now contains, no one, it seems, could doubt that such additional enactment would have amounted to the partial repeal of a general law, and the consequent enactment of a special or local law. Because, in such cases, the partial repugnancy would accomplish the partial repeal. [Potter's Dwarr., 113, 155, and cas. cit.; Sutherland Stat. Constr., secs. 137, 138, and cas. cit.] But the case is in nowise altered by reason of the fact that such repeal was in reality accomplished by the pretended and formal amendment by enacting as a part and parcel of Section 1764 the proviso aforesaid, which declares the old law intact save in the city of St. Louis, and save in regard to the then incumbent of the office of judge of probate in that city. If such legislation as this can be sustained, then there is neither force nor efficacy in the constitutional prohibition which forbids that the Legislature 'indirectly' enact such special or local law by the partial repeal of a general law.' . . . They (the Legislature) first pass a general law which declares that 'the judge of probate shall receive such fees for his services as now are or may hereafter be allowed by law for probate business,' then, after that law had been in operation for twenty years, it occurred to the Legislature to repeal that section and immediately re-enact it, coupled with a proviso that makes that general law applicable to every probate court in the State, except in the city of St. Louis; the only city in the State that can, under the Constitution, have a probate court. It is true that as to mere form this act is not the partial repeal of a general law, but in reality that it is such partial repeal, who can doubt? In such cases courts will look at the true drift, meaning and purpose of the litigated act, and will not permit themselves to be misled or deceived by subterfuging schemes and diaphanous disguises. [Dunne v. Railroad, 131 Mo. l. c. 5.] The mere form an act is made to assume will not determine its constitutional character; that will be determined by its operation. [State ex rel. v. Herrmann, 75 Mo. 340; State v. Julow, 129 Mo. 163.] . . . It should, therefore, be ruled that the act in question is invalid because it is the partial repeal of a general law, and local as well as special."

We think the series of Laws of 1923, aforesaid, are unquestionably violative of Subsection 33, Section 53, of Article IV, of the Constitution, as respects Jasper County, in that their effect amounts to the

indirect enactment of a special or local law, applicable to Jasper County alone, by the partial repeal, by necessary implication, of a general law theretofore applicable to several counties as a class, including Jasper County.

III. But there is another and additional reason why we think that said series of laws enacted by the Legislature in 1923, construed *in pari materia* as a single act or legislative enactment, are invalid and unconstitutional, as respects Jasper County, and that is that said series of laws contravene Subsection 32 of Section 53 of Article IV of the Constitution. The probable reason for the insertion of the subsection just referred to into the Constitution of our State is thus suggested in Bridges v. Mining Co., 252 Mo. 53, 56, wherein we said: "It seems that the framers of our organic law were especially apprehensive that future legislatures of the State would undertake to harass the people with obnoxious special or class legislation. After enumerating numerous kinds of special and local laws which should not be enacted, they inserted the following provision in the Constitution: 'In all other cases where a general law can be made applicable, no local or special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined, without regard to any legislative assertion on that subject.' [Par. 32, sec. 53, art. 4, Constitution of Missouri.] The clause of the Constitution last quoted is significant. We cannot suppose that its authors were endowed with the gift of prophecy, but they were undoubtedly men of splendid foresight. . . . When a vicious law is presented to the General Assembly, which would, if enacted, become applicable to several counties, such vicious law is most likely to meet with sufficient opposition to cause its defeat; but when a law of that character contains provisions which prevent it from becoming applicable to more than one county, it is most likely to be enacted without careful consideration by the legislators. This well-known fact probably furnished the reason for the constitutional inhibition against local or special laws where general laws can be made applicable. The fact that a law general in its language will not apply to more than one county does not necessarily render it invalid; but when language is inserted in an enactment which shows an unmistakable intention to restrict its operation to one or more counties, and there exists no sound reason for such restricted application, then it falls within the prohibition of Section 53, Article 4, Constitution of Missouri."

Prior to the enactment of said series of acts of 1923, Section 10684, Revised Statutes 1919, and said Act of April 7, 1921, construed together *in pari materia* as one single law, applied, perforce of the

classifications therein made, to four counties of the State, namely, Greene, Jasper, Buchanan and St. Louis counties, as a class, all more or less similarly situated with respect to the classifications made as to population, taxable wealth, and mileage of macadamized or rock public roads. The general law, therefore, made a class of said four named counties. After the enactment of said series of acts of 1923, the middle (so to speak) of the class previously made by general law was cut out, excluding Jasper County alone from the prior class, but the two ends, or extremities, of the prior class were left standing, thereby leaving Greene, Buchanan and St. Louis counties still within the class of counties which are to have a board of road overseers. In other words, Jasper County alone, although it met every requirement of the prior and existing general law, was singled out and excluded therefrom perforce of the enactment of said series of acts of 1923, while Greene, Buchanan and St. Louis counties, which likewise met every requirement of the prior and existing general law, were in effect retained within its provisions perforce of the enactment of said series of acts of 1923. The three acts of 1923, aforesaid, construed *in pari materia* as one single law, therefore included less than all of the several counties similarly situated.

In State ex inf. v. Hedrick, 294 Mo. 21, 41, HIGBEE, J., in a separate opinion therein, quoted approvingly from State ex rel. v. Hancock, 66 N. J. L. 133: "A law is special in a constitutional sense when, by force of an inherent limitation, it arbitrarily separates some persons, places or things from others upon which but for such limitation it would operate. *The test of a special law is the appropriateness of its provisions to the objects that it excludes.* It is not, therefore, what a law includes that makes it special, *but what it excludes.*" (Italics ours.)

In the same case, JAMES T. BLAIR, C. J., in a separate concurring opinion in which a majority of this court concurred, said (294 Mo. l. c. 74): "The basis of sound legislative classification is similarity of situation or condition with respect to the feature which renders the law appropriate and applicable. *A law may not include less than all who are similarly situated.* If it does, it is special and, therefore, invalid, because it omits a part of those which, in the nature of things, the reason of the law includes." (Italics ours.)

The question which now presents itself is whether there existed, at the time of the enactment of said series of laws of 1923, any reasonable ground or basis for the General Assembly excluding and omitting Jasper County alone from the prior and existing general law, whereas Greene, Buchanan and St. Louis counties, all more or less similarly situated, were, in effect, left subject to the provisions of the prior and existing general law. While, in some instances, classification of counties and municipalities by population for the

purpose of legislation has been held by this court to be legally permissible, and therefore not in contravention of Section 53, of Article IV, of the Constitution, such classification has been held to be legally permissible only when there appears to be a reasonable necessity therefor. In State ex rel. v. Roach, 258 Mo. 541, 563, this court, en banc, quoted with approval the following language used in State ex rel. v. Miller, 100 Mo. l. c. 448: "To make such a law general there must be some distinguishing peculiarity which gives rise to a *necessity* for the law as to the designated class. A mere classification for the purpose of legislation without regard to such *necessity* is simply special legislation of the most pernicious character and is condemned by the Constitution. Mere differences which would serve for a basis of classification for some purposes, amount to nothing in a classification for legislative purposes, unless such differences are of a character as, in the nature of things, to call for and demand separate laws and regulations." Again, in the very recent case of State ex inf. v. Armstrong, 315 Mo. 298, 309 et seq., we said: "It is true that the title to the act, and the first section thereof . . . , use general language in an attempt to give to the act the color of a general law, rather than a local and special one. This kind of a camouflage has never worked with this court. . . . The doctrine of classification by population in the enactment of laws is being much overworked. . . . Any classification to take an act out of the constitutional prohibition as to local and special laws must be a classification based upon reasonable and sound grounds. That is, *there must be a sound and reasonable basis for the classification.*" (Italics ours.)

The respondents suggest, in their brief herein, several reasons why the General Assembly of 1923 may have reasonably excluded Jasper County, and all other counties which may thereafter have a population of not less than 75,000 nor more than 90,000 inhabitants, from the provisions of the prior and existing general law respecting a county board of road overseers, and, as the practical result of said three enactments of 1923, left Greene, Buchanan and St. Louis counties untouched and unaffected by such later legislation. It is argued that, inasmuch as Jasper County then had more than 200 miles of macadamized or rock public roads, the Legislature may have considered the road work of Jasper County as finished or completed, thereby making it unnecessary to longer continue the board of road overseers in that county. The legislation, itself, upon the subject refutes such argument. Section 10684, Revised Statutes 1919, within whose peculiar requirements Jasper County originally fell, made it necessary, in order for any county to meet the requirements of said section, that such county must have more than 200 miles of macadamized or rock public roads. The later Act of March 14, 1923 (Laws 1923, p. 334), amending said Section 10684, Revised Statutes

1919, likewise made it necessary, in order for any county to meet the requirements of said section, as amended, that such county must have more than 200 miles of macadamized or rock public roads. In other words, both the prior and the later legislation upon the subject indicates that the Legislature deemed the greater number of miles of macadamized public roads in a county as an urgent reason for the existence and continuance of a board of road overseers in such county, rather than as a reason for the abolishment and discontinuance of said board in such county.

Another reason for such legislative action suggested by respondents is that the General Assembly of 1923 was cognizant of the fact that a law had been enacted creating a state highway system of hard surface roads, and providing for the construction and maintenance of state roads by, and under the exclusive supervision and control of, the State Highway Commission, without county control or supervision; wherefore, it was unnecessary to longer continue a board of **road overseers** in Jasper County. But if such were the reason for the exclusion of Jasper County from the previously existing general law, by the enactment of the series of acts of 1923, aforesaid, then such reason applied as well to Greene, Buchanan and St. Louis counties, for it is a well-known fact that only a small per centage of the public roads of each and every county of the State has been included in the state highway system and has thereby been placed within the exclusive control and supervision of the State Highway Commission; and, furthermore, Jasper County seemingly contained no greater mileage or percentage of state roads than did Greene, Buchanan or St. Louis counties.

It is also suggested by respondents that counties having a population between 75,000 and 90,000 (of which there is now but one, Jasper County) may have a number of special road districts, and for that reason the General Assembly of 1923 may have excluded Jasper County from the operation of the prior and existing general law. But it does not appear that Jasper County had any greater number of special road districts than said county had in 1919, when Section 10684, Revised Statutes 1919, was originally enacted; nor does it appear that Jasper County had any more special road districts than did Greene, Buchanan or St. Louis counties, all of which counties were left untouched and unaffected by the legislation of 1923.

Lastly, it is suggested by respondents that, perhaps, the General Assembly may have intended to relieve Jasper County, because of the condition of its revenues, from the burden of the salaries of the board of road overseers. It is not apparent to us that the conditions suggested as existing in Jasper County were peculiarly different from the conditions existing in Greene, Buchanan and St. Louis counties; but if they were, the Constitution (Sec. 54, Art. IV) pro-

vides a method or procedure for the enactment of a local or special law applicable only to Jasper County. Such procedure was not followed by the General Assembly in the enactment of said series of acts of 1923. In State ex inf. v. Armstrong, supra, 315 Mo. 298, we said: "The whole arguments in the briefs go to what counsel term the peculiar conditions of St. Louis County. We are not impressed that the conditions are so different from other rural communities in the State as to require a special act, but if they are, then the legislation must proceed under Section 54 of Article IV of the Constitution."

It follows that the board of road overseers of Jasper County was not legally abolished by said series of acts of 1923, and the defendants and appellants are each entitled to perform the services, and to receive the annual salary of $1200, prescribed by Section 10684, Revised Statutes 1919.

Therefore, the judgment *nisi* must be reversed, and it is so ordered. *Lindsay* and *Ellison, CC.*, concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.