STATE of Missouri ex rel. the SCHOOL
DISTRICT OF KANSAS CITY,
Relator,

v.

Harvey B. YOUNG, Jr., et al., each as a member of the Missouri State Board of
Education, Respondents.

No. KCD 27181.

Missouri Court of Appeals,
Kansas City District.

Feb. 3, 1975.

William C. Nulton, Larry L. McMullen, David L. West, Shirley Ward Keeler, Blackwell, Snaders, Matheny, Weary & Lombardi, Kansas City, for relator.

John C. Danforth, Atty. Gen., D. Brook Bartlett, First Asst. Atty. Gen., Jefferson City, for respondents.

Before DIXON, C. J., and SHAN-GLER, PRITCHARD, SWOFFORD, WASSERSTROM, SOMERVILLE and TURNAGE, JJ.

SOMERVILLE, Judge.

This is an original proceeding in mandamus whereby The School District of Kansas City, hereinafter referred to as "relator", seeks a writ from this court commanding the members of the Missouri State Board of Education, hereinafter referred to as "respondents", "[i]n the distribution of state aid to relator, The School District of Kansas City, after July 15, 1973 and through May 31, 1974 to make a deduction which includes only the completed assessed valuation of property in the district of relator, The School District of Kansas City, the preceding year (1972), and specifically does not include property which in the preceding year was in the Pleasant Valley, Jackson County, Missouri School District No. 15 . . .". An alternative writ was issued and the matter now comes up for decision as to whether the alternative writ should be made peremptory.

The confrontation between relator and respondents, which has culminated in this mandamus proceeding, revolves around statutory language contained in Subsection 2 of Section 163.031, RSMo 1969, V.A.M. S., Section 163.031, supra, one of several sections contained in Chapter 163, RSMo 1969, V.A.M.S., relating to state aid to school districts for their educational programs, contains nine subsections and is captioned, "Equalization, amount how determined, source of funds, how spent." Only the contextual portion of Section 163.031, supra, containing the controversial language directly involved in this proceeding will be set forth:

"2. From the minimum guarantee for each district there shall be deducted the amount derived from a tax of one dollar and twenty-five cents for each one hundred dollars of *the completed assessed valuation of the property in the district the preceding year* equalized to thirty percent . . . .". (Emphasis added.)

Facts precipitating this original proceeding in mandamus may be stated with considerable brevity. On January 1, 1973, relator, as prescribed in Section 162.441, RSMo 1969, V.A.M.S., annexed Pleasant Valley, Jackson County, Missouri School District No. 15, hereinafter referred to as "Pleasant Valley". This court notes, parenthetically, that Subsection 3 of Section 162.441, supra, among other things, provides that the boundary lines of a district (relator) to which annexation is proposed, from the date of annexation, "shall be changed to include the district" which proposed the annexation (Pleasant Valley). Pleasant Valley, for a period of years immediately preceding the effective date of annexation, had failed to meet the eligibility requirements for state aid set forth in Section 163.021, RSMo 1969, V.A.M.S. The 1973 "assessed valuation" of the property formerly in Pleasant Valley was approximately $39,000,000.00. No evidence was presented to the court indicating or suggesting that the 1972 "assessed valuation" of the property formerly in Pleasant Valley was substantially different. In June of 1973 relator filed its application for state aid for the 1973–74 school year. Section 163.081, RSMo 1969, V.A.M.S. The application filed by relator did not re-

flect "the amount derived from a tax of one dollar and twenty-five cents for each one hundred dollars" of the assessed valuation of the property in Pleasant Valley for the year of 1972 equalized to thirty percent. Respondents refused to accept relator's application as filed and computed relator's minimum guaranteed state aid for the 1973–74 school year on the basis of additionally deducting "the amount derived from a tax of one dollar and twenty-five cents for each one hundred dollars" of the assessed valuation of the property in Pleasant Valley for the year 1972 equalized to thirty percent. The end result being that the amount of state aid allocated to relator for the 1973–74 school year was $586,600.-00 less than the amount it claims it was entitled to receive. Relator received "all money and property on hand" belonging to Pleasant Valley on January 1, 1973, "including a bank account balance of some $400,000." Section 162.441, supra. On or about July 15, 1973, "The Kansas City School District's full tax rate ($4.23/$100.-00) was levied against the assessed valuation (some $39,000,000.00) of the property which had been a part of the Pleasant Valley School District in 1972". Since 1949 respondents, and their predecessors, have consistently construed and applied the statutory language, "in the district", as referring to school districts as geographically constituted at the time of applying for state aid, rather than as geographically constituted the preceding year.

A unanimity of opinion exists between the relator and respondents as to one narrow aspect of their controversy—the judicial key thereto lies in the meaning of the previously quoted language contained in Subsection 2 of Section 163.031, supra. Beyond that, unanimity of opinion between the relator and respondents completely disappears and, as one might well suspect, the relator and respondents are poles apart as to the meaning to be ascribed to the emphasized portion of the quoted statutory language.

The apical issue in this controversy is the point of time prescribed by Subsection 2 of Section 163.031, supra, for initially reflecting, in computing relator's minimum guaranteed state aid, the assessed valuation of the property in the former Pleasant Valley district. Relator vigorously contends the point of time to be "the year following the year in which the property [was] annexed". Respondents, with equal vigor, contend the point of time to be "the time of the first state aid application following [the] change in boundary lines". Correlating the respective contentions of the parties with the challenged language employed in Subsection 2 of Section 163.-031, supra, relator, on the one hand, contends "property in the district the preceding year" means property in relator district the preceding year as it was geographically constituted the year preceding the annexation of Pleasant Valley, while respondents, on the other hand, contend "property in the district the preceding year" means property in relator district the preceding year as it was geographically constituted at the time its application for state aid was filed (after annexation of Pleasant Valley).

Relator postulates that the statutory language in question is unequivocal, therefore susceptible only of the meaning it has attributed to it. Relator then advances this unwarranted postulate in a manner that inures to it every favorable benefit that can be derived. Relator's unwarranted postulate in this respect runs the following course. Unambiguous statutes are not subject to judicial construction, courts may not alter statutes under the guise of construction, and certain well fixed principles of statutory construction are either not controlling or are irrelevant: all feeding relator's ultimate thesis that a literal reading of the statutory language in question, beyond the pale of judicial doubt, lends itself solely to the meaning ascribed to it by relator.

This court is not clairvoyant. The statutory language under scrutiny has been read and re-read, studied and re-studied, casually and intensely, in depth and superficially, and each reading and approach has left this court with the unshakable conclusion that the language employed is patently subject to an ancipital meaning, thereby necessarily rendering it ambiguous. More bluntly put, this court has been unable to literally read a definite and fixed point of time for determining the boundaries of a district from the language "the complete assessed valuation of the property in the district the preceding year". Is the controlling point of time when the application for state aid is filed or the preceding year? The statutory language employed is susceptible of either interpretation. The ambiguous nature of the language is exemplified by the diametrically opposed construction advanced by the relator and respondents. "Language is ambiguous where it is susceptible of interpretation in opposite ways." J. E. Blank v. Lennox Land Co., 351 Mo. 932, 174 S.W.2d 862, 868 (banc 1943). More directly in point, "[a] statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses." State v. Lucas, 24 Wis.2d 262, 128 N.W.2d 425, 428 (1964).

From a practical standpoint, the ambiguity in question breaks the surface and becomes viable only on those limited occasions when the boundaries of a school district at the time of applying for state aid are different than they were the preceding year. When the boundaries of a district at the time of applying for state aid and during the preceding year are the same, the ambiguity, for all practical purposes, is dormant. But dormant or viable, the ambiguity inheres by virtue of the language utilized in the statute.

The court is not unmindful that it has no prerogative, under the guise of judicial construction, to impart or interpolate words into an unambiguous statute. Betz v. Kansas City Southern Ry. Company, 314 Mo. 390, 284 S.W. 455, 461 (1926); and McLaurin v. Frisella Moving and Storage Company, 355 S.W.2d 360, 364 (Mo.App.1962). On the other hand, it is cognizant that it is impressed with a judicial duty to construe and determine the meaning of ambiguous legislative acts involved in justiciable controversies if it is possible to do so. State ex rel. Union Electric Light & Power Co. v. Baker, 316 Mo. 853, 293 S.W. 399, 401 (banc 1927). Although all rules of statutory construction are cognate as to their basic function, they are widely diverse in nature and many times conflicting. Nevertheless, one cardinal principle stands out with pristine clarity, free of diversity and conflict. The intent of the legislature controls! As aptly stated in Edwards v. St. Louis County, 429 S.W.2d 718, 722 (Mo. banc 1968), "[i]n all these diverse and sometimes conflicting rules the ultimate guide is the intent of the legislature; the other rules of construction may be considered merely as aids in reaching that result; and the purpose and object of the legislation should not be lost sight of." See also: State ex rel. Schwab v. Riley, 417 S.W.2d 1, 4 (Mo. banc 1967); and State ex rel. Lee American Freight System Inc. v. Public Service Commission, 411 S.W.2d 190, 193 (Mo. banc 1966).

The historical basis of the equalization formula contained in Section 163.031, supra, is found in Laws of 1931, p. 340, Sec. 13. The equalization formula contained therein provided, inter alia, for deducting from the minimum guaranteed amount, an amount equal to "[t]he computed yield of a tax of twenty cents on each one hundred dollars ($100) of the assessed valuation of the property of the district." The language, "the preceding year", first crept into the equalization formula in 1955. In Laws of 1955, p. 521, Section 3, the following language is found: "From this product there shall be deducted the amount derived from a tax of one dollar for school purposes on each one hundred dollars of the completed assessed valuation of the property the preceding year in the district

. . . .". In 1969, the equalization formula effected by Laws of 1955, supra, was amended by Subsection 2 of Section 163.-031, supra, and the order in which the language, "the preceding year", appears was changed and the equalization formula, in the respect herein under consideration, as changed, now reads, "[f]rom the minimum guarantee for each district there shall be deducted the amount derived from a tax of one dollar and twenty-five cents for each one hundred dollars of the completed assessed valuation of the property in the district the preceding year . . . ."

Judicial ascertainment of legislative intent connotes more than speculation, conjecture or surmise. There are occasions when judicial ascertainment of legislative intent is fraught with almost insurmountable difficulties. But such is not presently the case. The preceding review of the legislative history relative to equalization of state aid for public schools, from inception to date, reveals, above all else, a broad, pervasive legislative intent to at least partially equalize the relative disparity in wealth between affluent and less affluent school districts. Relator's construction of the statutory language in question would rebuke this broad, pervasive legislative intent, while on the other hand, respondents' construction would serve it.

Relator contends that its construction of Subsection 2 of Section 163.031, supra, is reinforced in view of the 1969 amendment, supra. As previously noted, the statutory language in question from 1955 to 1969 read, "the completed assessed valuation of the property the preceding year in the district", but in 1969 was amended, and in its present form reads, "the property in the district the preceding year." Citing Darrah v. Foster, 355 S.W.2d 24 (Mo.1962) and In Re Interest of T—— G——, Jr., 455 S.W.2d 3 (Mo.App.1970), relator argues that the rule of statutory construction recognized therein, viz., that the legislature is presumed to have effected a change, rather than merely effecting a reiteration of a prior statute, by amending a prior statute

and enacting a new statute in its place, buttresses its construction of the language in question. Relator further advances its basic thesis by reliance upon the "last antecedent" doctrine, a general rule applicable to the construction of words, phrases and clauses. As expressed in Parker v. Green, 340 S.W.2d 435, 440 (Mo.App.1960), "words, phrases and clauses are applied to the word or phrase immediately preceding, not to others more remote." Relator submits that application of the "last antecedent" doctrine to the pivotal language in question clearly demonstrates that the phrase "the preceding year" modifies the antecedent phrase "property in the district" and that it "logically follows that the legislative intent in the 1969 revision was to make clear the application of the modifying phrase 'the preceding year' to the phrase 'property in the district'." Assuming, arguendo, that relator's suggested application of the "last antecedent" doctrine is logical, it throws no real light on resolving the infirmity still present in the statutory language in question. Did the legislature intend that the boundaries of the school district, in point of time, were as they existed at the time the application for state aid was made, or as they existed the preceding year? The following fundamental observation is made —the ambiguity just mentioned prevailed in the statutory language as it existed between 1955 and 1969 and still prevails after the 1969 revision. As a practical matter, the 1969 revision did nothing more than collocate the same words in a different order. Doing so, however, failed to expunge from the statutory language the ambiguity around which this litigation revolves.

■ Rules of statutory construction should be subservient to legislative intent. Conversely, legislative intent should not be subordinate to rules of statutory construction. If a rule of statutory construction subverts a broad, pervasive legislative intent then it becomes highly suspect as a judicial tool for resolving a particular ambiguity. With these admonitions in mind, attention now focuses on certain well estab-

lished rules of statutory construction believed to subserve rather than subordinate the broad, pervasive legislative intent encompassing the present ambiguity. In this vein, the following rules or canons of construction are deemed significantly applicable. The interpretation given an *ambiguous* statute by an agency or branch of government charged with its execution or administration is entitled to great weight in judicially ascertaining legislative intent, and, concomitantly, in resolving the statutory ambiguity. Foremost-McKesson, Inc. v. Davis, 488 S.W.2d 193, 197 (Mo. banc 1972); State ex rel. Curators v. Neill, 397 S.W.2d 666, 670 (Mo. banc 1966); and State ex rel. Harline v. Public Service Commission of Missouri, 343 S.W.2d 177, 182, 183 (Mo.App.1960). An equally vital canon of construction is that an ambiguous statute will not be construed so as to work an unreasonable or absurd result. State ex rel. Dravo Corporation v. Spradling, 515 S.W.2d 512, 517 (Mo.1974); State ex rel. Stern Brothers & Co. v. Stilley, 337 S.W. 2d 934, 939 (Mo.1960); and State ex rel. Moseley v. Lee, 319 Mo. 976, 5 S.W.2d 83, 89 (1928).

■ The above canons of construction constitute a template by which a judicially ascertainable meaning can be carved from the ambiguous language in question. Since 1955, respondents, and their predecessors, have consistently construed and applied "in the district", as presently and as previously contained in the applicable statutory language, as referring to school districts as geographically constituted at the time of applying for state aid. The consistent construction given by respondents, and their predecessors, is entitled to great weight in resolving the ambiguity at hand. Foremost-McKesson, Inc. v. Davis, supra. The construction given the statute by respondents effectuates, is consistent with, and fully compliments the clearly discernible, broad, pervasive legislative intent—to equalize the relative disparity in wealth (assessed valuation) between the various school districts in the state. More pointedly, if relator's construction of Subsection 2 of Section 163.031, supra, were to prevail, a school district to which annexation was proposed, and whose board, by a majority vote, voted in favor of the proposed annexation (Section 162.441, supra), under facts similar to those presented by this particular case, would receive every measurable benefit to be derived from annexation, while at the same time being freed for one year from the full impact of the concept of equalization sought to be achieved by Section 163.031, supra. This alone would work an unreasonable and absurd result in that it would violate the broad, pervasive legislative intent to at least partially equalize the relative disparity in wealth between affluent and less affluent school districts by distribution of state aid. The facts presented by this case vividly demonstrate the validity of relying upon the above canons of construction to resolve the ambiguity. When relator annexed Pleasant Valley on January 1, 1973, it came into possession of all the property and money belonging to Pleasant Valley and the assessed valuation of the property in relator's district was swollen approximately $39,000,000.00. Section 162.441, supra. Thus, when relator filed its application for state aid in June of 1973 for the 1973–74 school year (required to be filed between June 15 and June 30, Section 163.081, supra), it had already gained measurable benefits from the annexation of Pleasant Valley. Perhaps the most significant benefit being the increased tax base that it acquired. This increased tax base made additional tangible dollar benefits available to relator during its 1973–74 school year by virtue of increased local tax benefits. Computed on the basis of relator's 1973 levy for school tax purposes ($4.23 per one hundred dollars assessed valuation), the $39,000,000.00 tax base acquired from Pleasant Valley apparently yielded relator approximately $1,649,-700.00 in additional funds from local tax sources for its 1973–74 school year, an amount that would appear to more than offset any loss in state aid it claims will accrue ($586,600.00) if its construction of

Subsection 2 of Section 163.031, supra, does not prevail. At this juncture, it is noted that relator has offered no facts indicating or suggesting that increased costs attendant to the annexation of Pleasant Valley did or would exceed the difference between $586,000.00 and $1,649,700.00.

Various hypothetical situations arising from annexation (Section 162.441, supra), reorganization (Sections 162.171 to 162.-201, inclusive, RSMo 1969, V.A.M.S.) and consolidation (Sections 162.223 to ·162.251, inclusive, RSMo 1969, as amended, V.A.M.S.) of school districts, in the context of when they might become effective, and relative to application of the statutory language in question, have been studied and analyzed from both the standpoint of the construction advanced by relator and as advanced by respondents. The resulting conclusion drawn by this court after such study and analysis is that the construction advanced by respondents, by overwhelming weight of comparison, most consistently comports with the legislative intent imbedded in Section 163.031, supra.

Relator argues that if respondents' construction of Subsection 2 of Section 163.-031, supra, prevails, all school districts in the state will fall heir to a "windfall" of $586,600.00, since Pleasant Valley had not previously qualified for state aid. Granted that such would be the case, such a result would not be inconsistent with or violative of the garnered legislative intent.

Statutory reference to the "completed assessed valuation of the property . . . the preceding year . . .", perhaps an unavoidable anomaly, appears to account for the ambiguity prevalent in the statutory language which this court is called upon to construe. Since a school district is required to file its application for state aid between June 15 and June 30, Section 163.031, supra, the legislature apparently concluded that the latest available

"completed assessed valuation" was that for the preceding year (See Chapter 138, RSMo 1969, V.A.M.S.). While this observation may not be a direct aid in construing the statutory ambiguity at hand, indirectly it constitutes an aid for doing so, and, at the same time, accounts for the difficulty encountered by the legislature in purging the statutory language of ambiguity.

This court is acutely aware that most, if not all, school districts in this state are financially pressed, relator included. The underlying legislative concept of state aid for public schools was and continues to be a responsible recognition of the problem and an attempt to alleviate it on as fair a basis as possible. The legislature, to date, has determined that equalization is the vehicle best suited to achieve fairness in the distribution of state aid. For these reasons, this court is averse to taking an empathic approach in terms of relator alone to resolve the present ambiguity. To do so would be incompatible with "the rule of law", and would subvert, not serve, the broad, pervasive legislative intent undergirding the state foundation program. The law is stripped of all fiber and substance if it is nothing more than an expression of judicial empathy on a case to case basis.

■ "[T]he district", in the context of "the completed assessed valuation of the property in the district the preceding year equalized to thirty percent", Subsection 2 of Section 163.031, supra, is hereby judicially construed to mean a school district as geographically constituted at the time it files an application for state aid. Having so determined, this court's alternative writ of mandamus was improvidently issued and the same is hereby quashed and relator's prayer for a peremptory writ of mandamus is denied.

All concur.